IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **IVAN G. RICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. _05-187C_** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Senior Judge James F. Merow** |
| **Defendant.** | ) | |

**PLAINTIFF RICE'S RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Plaintiff, Ivan G. Rice ("Rice"), opposes Defendant's Motion For Entry Of A Protective Order and asks this Court to instead enter Rice's proposed Protective Order, attached as Exhibit A.[1]

Summary

Defendant's proposed Protective Order is deficient and unfair because it prohibits Mr. Rice, a party to this action, and inventor of the patent, from having access to highly relevant documents that prove copying of his invention. Mr. Rice is clearly a "non-competitor." He is fully retired, and not at all active in consulting, publishing technical papers, or filing or prosecuting patent applications. Plus, Mr. Rice owns no patents other than the patent at issue; and except for work on this case is not active whatsoever in gas turbine technology or other engineering matters. Therefore, any possibility of competitive harm to defendant and non-parties resulting from Rice's having access to

---

[1] Plaintiff's proposed Protective Order includes Rice as a Qualified Person in paragraph I, section (2) which is underlined in the following passage which states "[t]he term qualified person shall mean any of the following . . . (2) the plaintiff, Rice; . . . ."

their confidential information is practically nil. Further, as the inventor, Rice is uniquely qualified to demonstrate how Rolls-Royce's confidential documents prove direct copying by Rolls-Royce in its development of the WR-21.

Argument

1. The Operative Facts Have Changed

Eight (8) years ago, the Court rendered a decision excluding Mr. Rice from a virtually identical protective order, in ***Rice v. United States***, 39 Fed. Cl. 747 (1997). However, the operative facts upon which that decision was based have changed dramatically. Indeed, by letter dated July 6, 2005, Plaintiff presented the new circumstances to Defendant in an effort to resolve the dispute concerning the protective order now being ruled on by this Court.[2]

At the time of the earlier decision, eight years ago, Mr. Rice admitted that he was "semi-retired," and still an "active consultant" in the area of gas turbine technology. Accordingly, the Court found that Mr. Rice "failed to demonstrate that he is not a competitor with defendant and its contractors." ***Id***. at 751. The Court therefore held that Mr. Rice should not be allowed to be a "Qualified Person" under the protective order. The court said: "In view of the scope of plaintiff's current endeavors in gas turbine technology, defendant and nonparty arguments that plaintiff's direct participation in this case could cause harm through disclosure of proprietary information is persuasive." ***Id***. at 752.

[2] See Exhibit B, letter dated July 6, 2005 from Douglas H. Elliott to Frederick Buchan, Jr.

But now, as outlined below, it is evident that the circumstances have changed, and the scales have tipped back in favor of Mr. Rice, something the private supplying owners (particularly Rolls-Royce) have overlooked, or ignored, in their letters objecting to Mr. Rice's being considered a "Qualified Person" under the protective order. (See letters attached as exhibits to Defendant's Motion.) Therefore, no valid basis exists for preventing Mr. Rice to fully participate in this case under the protective order.

2. Rice Is A Non-Competitor.

Mr. Rice is clearly a "non-competitor." He is fully retired. He is no longer active in the technical field of gas turbines; no longer consults, publishes, attends conferences, engages in licensing, or seeks patents in the gas turbine industry. Any threat that Rice will inadvertently reveal confidential information, e.g., in published articles, through consulting or by filing or amending a patent application, is nonexistent. Rice's declaration, attached as Exhibit C, sets forth the following facts:

- Rice is eighty (80) years old, and is fully retired.
- Except for his work relating to enforcing this patent, Rice is not active in any engineering and/or technical work whatsoever.
- Rice has fully retired from his work as a consultant, and has not consulted since July 1996 (over nine years).
- Rice is not active in any professional societies and has not attended any professional conference of any type (e.g. American Society of Mechanical Engineers, Texas Society of Professional Engineers, and National Society of Professional Engineers) since 1997 (over eight years).

- Rice owns no pending patent applications and has no plans to file any patent applications in the future.
- Rice owns no other patents, besides the patent in suit. All other patents have been sold or have expired.
- Rice has not written a technical article since 1997 (over 8 years), and has no plans to do so in the future.

The most pertinent case on this issue is ***Standard Space Platforms Corp. v. United States***, 35 Fed. Cl. 505 (1996). In that case, this Court permitted a "co-inventor of the patented technology" who was "'currently employed as a commissioned life insurance and registered securities sales agent'" to have access, under a protective order, to confidential documents relating to the space industry. ***Id***. at 508-09. The plaintiff was not a "competitor," and the defendant had "failed to show that there is any greater risk that [the co-inventor] would misuse confidential information as compared to an aerospace or other technical expert. In fact, there may well be less risk because, by all appearances, he is no longer active in the aerospace field and simply sells insurance." ***Id***. at 509. The Court stated that "defendant has failed to produce even a scintilla of evidence that [plaintiff/inventor] seeks to use any confidential information for any purpose other than this litigation." ***Id.***

By the same token, here, because Rice is not a competitor, the threat to Defendant and non-parties is virtually non-existent and as a result, Rice should be classified as a "Qualified Person" with access to "Protected Information."

3. <u>Rice Is Uniquely Qualified</u>

Moreover, Rice is uniquely qualified to review Rolls-Royce development and design documents, which are expected to serve as compelling evidence of copying by

Rolls-Royce. Not only is Rice the inventor of the technology at issue, but he also has insight into the circumstances of how Rolls-Royce developed the WR-21 using his invention. He needs access to Rolls-Royce documents to help him prove his case.

First, Mr. Rice is the inventor. In 1983 Rice conceived the patented invention, which is described in U.S. Patent No. 4,896,499 (the '499 patent) and Reexamination Certificate No. B1 4,896,499 (the '499 Reexamination Certificate), both attached as Exhibit D.

Inventors of the subject matter of the patent at issue have been given access to confidential documents to prove their case. In ***THK America, Inc. v. Nippon Seiko K.K.***, 141 F.R.D. 461, 462 (N.D. Ill. 1991), the terms of defendant's proposed protective order sought to exclude present and past employees of plaintiff/assignee from viewing their confidential documents. Those terms would have excluded the assignor/inventor of the patent at issue. ***See id***. The court rejected those terms, stating that "[p]laintiff correctly reasons that, as the chief executive officer of [plaintiff] and the inventor of the patented products at issue, [the inventor] is the most knowledgeable person about the issues in this case. Clearly, he should be able to assist in the evaluation and prosecution of his company's suit on his patented inventions." ***Id***.

The same reasoning applies here. As inventor, Mr. Rice is the most knowledgeable person about issues in the case, and should be granted access to documents that would help him prove his case. It is anticipated that Rolls-Royce will argue that it "independently developed" the WR-21. Mr. Rice was fully aware of the state of the art in 1983 and 1984, including the engines that Rolls-Royce was using at the

time, and is best qualified to refute Rolls-Royce arguments. Prohibiting him from reviewing the Rolls-Royce documents would hinder those efforts.

Second, Mr. Rice is needed for demonstrating how Rolls-Royce's own internal documents prove that Rolls-Royce copied his invention. In 1984 Rolls-Royce had not developed the WR-21 engine. In 1984, at the 29th International Gas Turbine Conference and Exhibit, in Amsterdam (hereinafter the "Amsterdam conference"), Mr. Rice presented his paper, entitled "Evaluation Of The Compression-Intercooled Reheat-Gas-Turbine Combined Cycle," attached as Exhibit E (hereinafter, "Rice's 1984 Intercooler Paper"). That paper discussed his invention.

In January 1984, before the Amsterdam conference, to protect his United States patent rights, Rice filed a patent application for the invention described in his Intercooler Paper. That application resulted in the '499 patent in 1990; and then the reexamination certificate was granted in 1992. Rice's Intercooler Paper referred to the same invention contained in his patent and reexamination certificate. They even had identical drawings. Compare, for example, Figures 6b and 4 of the '499 patent (Exhibit D) with Figures 10 and 13 of Rice's paper (Exhibit E).[4]

At the 1984 conference in Amsterdam, numerous Rolls-Royce design engineers and managers first became aware of Mr. Rice's paper, and his invention. More than fifteen Rolls-Royce employees were listed as presenters and committee members at that conference; and numerous other Rolls-Royce design engineers and research managers were present at the conference. (See Exhibit C, Rice Declaration, ¶ 14; Exhibit F,

---

[4] Because of electronic filing size limitations, only the pertinent pages of the '499 Patent (Figures 4 and 6b) are attached as Exhibit D. Complete copies the '499 Patent and the '499 Reexamination Certificate are attached as Exhibits 1 and 2 to Plaintiff's First Amended Complaint.

selected pages from brochure entitled "29th International Gas Turbine Conference and Exhibit," (Rolls-Royce employees identified by arrows.))

The evidence is expected to show that, *only after* learning about Mr. Rice's invention at that conference, did Rolls-Royce "develop" the WR-21 engine by modifying its existing engines in accordance with the contents of Mr. Rice's paper and of his patent.

Plaintiff Rice believes a great deal of the evidence of Rolls-Royce copying can be found in Rolls-Royce's own documents. But only as a "Qualified Person" will Rice have access to Rolls-Royce's WR-21 development documents, allowing him to follow the paper trail that proves Rolls-Royce's direct copying of his invention. Accordingly, Mr. Rice submits he is uniquely qualified to analyze those documents.

Conclusion

Defendant's Motion For Entry of A Protective Order should be denied. Instead, Plaintiff's proposed Protective Order, which includes Rice as a "Qualified Person" with access to "Protected Information," should be entered.

Respectfully submitted,

Douglas H. Elliott
Attorney-in-Charge
Moser, Patterson & Sheridan, LLP
3040 Post Oak Blvd., Suite 1500
Houston, Texas 77056
Tel (713) 623-4844
Fax (713) 623-4846

ATTORNEY FOR PLAINTIFF

APPENDIX

| | | |
|---|---|---|
| Exhibit A | Protective Order | 1 |
| Exhibit B | Letter dated July 6, 2005 from Douglas H. Elliott to Frederick Buchan, Jr. | 2 |
| Exhibit C | Declaration of Ivan G. Rice dated July 21, 2005 | 3, 6 |
| Exhibit D | U.S. Patent No. 4,896,499 (the '499 patent) and Reexamination Certificate No. B1 4,896,499 (the '499 Reexamination Certificate) | 5, 6 |
| Exhibit E | Rice, Ivan G., "*Evaluation Of The Compression-Intercooled Reheat-Gas-Turbine Combined Cycle*," 29th International Gas Turbine Conference and Exhibit in Amsterdam, pp. 1-8 (1984) (referred to as "Rice's Paper") | 6 |
| Exhibit F | Selected pages from brochure entitled "29th International Gas Turbine Conference and Exhibit," (Rolls-Royce employees identified by arrows) | 6 |