IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| IVAN G. RICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-187C |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Senior Judge James F. Merow |
| | ) | |
| Defendant. | ) | |

**OPPOSITION OF NON-PARTY ROLLS-ROYCE INDUSTRIAL & MARINE GAS TURBINES, LTD. TO PLAINTIFF IVAN G. RICE'S REQUEST TO BE INCLUDED AS A "QUALIFIED PERSON" UNDER THE PROTECTIVE ORDER**

JAMES A. OLIFF
RICHARD E. RICE
OLIFF & BERRIDGE
700 South Washington Street
Alexandria, VA 22314
(703) 836-6400

Attorneys for Rolls-Royce Industrial & Marine Gas Turbines, Ltd.

August 8, 2005

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 4

A. Plaintiff Rice Remains A Competitor ..... 4

B. Plaintiff Rice Is Not Uniquely Qualified ..... 10

III. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akzo N.V. v. United States Int'l Trade Comm'n*,
808 F.2d 1471 (Fed. Cir. 1986), *cert. denied*, 482 U.S. 909 (1987) ........ 9

*Carpenter Technology Corp. v. Armco, Inc.*,
132 F.R.D. 24 (E.D. Pa. 1991) ........ 9

*IP Innovation, L.L.C. v. Thomson, Inc.*,
2004 WL 771233 (S.D. Ind. April 8, 2004) ........ 6, 7, 12

*Ivan G. Rice v. United States*,
39 Fed. Cir. 747 (1997) ........ 1

*Levine v. United States*,
226 Ct. Cl. 701 (1981) ........ 9

*Phillips Petroleum Co. v. Rexene Prods. Co.*,
158 F.R.D. 43 (D. Del. 1994) ........ 9

*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*,
682 F.Supp. 20 (D. Del. 1988) ........ 5, 9, 11, 12

*Standard Space Platforms Corp. v. United States*,
35 Fed. Cl. 505 (1996) ........ 6, 7

*THK America, Inc. v. Nippon Seiko K.K.*,
141 F.R.D. 461 (N.D. Ill. 1991) ........ 13

*Uram v. United States*,
216 Ct. Cl. 418 (1978) ........ 1

# INDEX TO APPENDIX

EXHIBIT NO.


| | |
|---|---|
| 1 | U.S. Patent No. 4,896,499 |
| 2 | Declaration of Martin John Duckworth |
| 3 | Excerpt of Rolls-Royce, Inc.'s Proposal For Flexi-Spey Regenerative Gas Turbine Study Submitted To The U.S. Navy In April 1982 |
| 4 | Complaint filed January 3, 1994, Ivan G. Rice v General Electric Company, Inc., Dist. Ct. Tex. (Civil Action No. H-94-0007) |
| 5 | Letter from Douglas H. Elliot, Esq., dated July 17, 1997, providing information on the Professional Background of Ivan Rice |
| 6 | Excerpts Of U.S. Patents Naming Ivan G. Rice As Inventor: U.S. Patents Nos. 4,272,953; 4,314,442; 4,384,452; 4,438,625; 4,507,914; 4,543,781; 4,545,197; 4,550,562; 4,565,490; 4,571,935; 4,592,204; 4,638,628; 4,813,227; 4,835,958; 5,628,183 |

Non-party Rolls-Royce Industrial & Marine Gas Turbines, Ltd. ("RRI&MGT") specially appears[1] (1) to oppose Ivan G. Rice's request to be included as a "Qualified Person" under the Protective Order and (2) to support entry of the Protective Order proposed by Defendant United States.

## I. INTRODUCTION

In a paper filed July 25, 2005, and styled a response,[2] Plaintiff Rice asks the Court to enter a Protective Order including him as a "Qualified Person."[3] For the reasons discussed below, RRI&MGT opposes Plaintiff Rice's request and supports the United States' motion for a Protective Order.

This Court should follow its 1997 Decision[4] determining that Plaintiff Rice is a competitor in relation to Defendant United States and its contractors. Plaintiff Rice's new assertion -- that he is now fully retired and no longer a competitor -- overlooks the obvious. Plaintiff Rice is still the owner of the asserted patent, *i.e.*, U.S. Patent No. 4,896,499 (the "'499 Patent") (attached as Exhibit 1). He is not simply a retired inventor or consultant.

Plaintiff Rice seeks in this litigation to enforce the '499 Patent against activities relating to the WR-21 engine developed by Defendant and its contractors, including RRI&MGT. Because he asserts patent rights in the WR-21 engine, Plaintiff Rice is a "competitor" to anyone who imports, makes, uses or sells that engine in the United States. In 1997, the Court found that

---

[1] By this special appearance, RRI&MGT does not subject itself to the jurisdiction of this Court. *Uram v. United States*, 216 Ct. Cl. 418, 420 (1978).

[2] The response is titled "Plaintiff Rice's Response To Defendant's Motion For Entry Of A Protective Order" ("Pl. Response").

[3] Under paragraph 4 (on pages 6-7) of the proposed Protective Order attached as Exhibit A to Plaintiff Rice's response, a "Qualified Person" has access to protected information.

[4] *Ivan G. Rice v. United States*, 39 Fed. Cir. 747, 751 (1997).

Plaintiff Rice "cannot be expected to separate his own original ideas from those gleaned from his review of the protected information in this case." 39 Fed. Cl. at 751. The same is true today.

Accordingly, RRI&MGT strongly opposes including Plaintiff Rice as a Qualified Person under the Protective Order. As demonstrated in the 1997 litigation, the Defendant and its contractors, including RRI&MGT, have documents in their possession or control that contain commercially sensitive technical and pricing information relating not only to the WR-21, but also to Rolls-Royce's RB211 commercial engine, upon which the WR-21 is based. *See* Declaration of Martin John Duckworth (attached as Exhibit 2). Disclosure of this proprietary information to a competitor such as Plaintiff Rice would create a serious risk of injury to Rolls-Royce and RRI&MGT. *Id.*

Plaintiff Rice does not challenge the need for a Protective Order or the legitimate right of RRI&MGT to protect its proprietary information. Instead, Plaintiff Rice asserts for the first time that he requires personal access to RRI&MGT proprietary information in order to investigate alleged "copying of his invention," an allegation not made in the 1997 litigation or in his 2005 complaint in this case. Indeed, copying is not relevant to Plaintiff Rice's cause of action against Defendant United States for infringement. Moreover, as discussed further below, the copying allegation lacks any basis in fact. Hence, the new argument that Plaintiff Rice "needs access to Rolls-Royce documents to help him prove his case" (Pl. Response, p. 5) has little merit.

Plaintiff Rice will have to concede that Rolls-Royce, Inc.[5] disclosed an intercooled marine gas turbine to the U.S. Navy in the United States before Plaintiff Rice even conceived his purported invention, much less publicly disclosed it. In his '499 Patent, Plaintiff Rice describes

---

[5] Rolls-Royce, Inc. is an affiliate of RRI&MGT.

his purported invention as an intercooled gas turbine comprising low-pressure compressor 24, intercoolers 38 and 40, high-pressure compressor 44, high-pressure turbine 46, low-pressure gas



Fig. 1

**Fig. 1 Of Plaintiff Rice's '499 Patent**

generator turbine 28 and coaxial shafts 26 and 48, as shown in Fig. 1. In his response filed in the litigation, Plaintiff Rice asserts that he conceived this purported invention in 1983 (Pl. Response, p. 5) and first publicly disclosed it at a professional conference in 1984 (*id.*, p. 6).

In 1982, however, before Plaintiff Rice's alleged conception date, Rolls-Royce, Inc. submitted a written proposal (Exhibit 3) to the U.S. Navy in the United States that included a design for an intercooled marine gas turbine. The design, shown schematically below, included a low-pressure (LP) compressor, an intercooler, a high-pressure (HP) compressor, a high-pressure (HP) turbine, a low-pressure (LP) turbine and a coaxial shafting arrangement. Rolls-Royce, Inc. submitted its design for an intercooled marine gas turbine to the U.S. Navy <u>two years</u> prior to the date when Mr. Rice alleges he first publicly disclosed his own purported invention.




**Figure From 1982 Rolls-Royce Proposal**

In view of the documented prior design of Rolls-Royce, Inc., Plaintiff Rice's copying allegation is clearly without factual basis.

## II. ARGUMENT

### A. Plaintiff Rice Remains A Competitor

Nothing has changed since 1997 that would warrant including Plaintiff Rice as a Qualified Person under the Protective Order. While Plaintiff Rice argues that he is now "fully retired," he admits that he remains occupied with enforcing the '499 Patent. He states: "Except for his work relating to enforcing this patent, Rice is not active in any engineering and/or technical work whatever." Pl. Response, p. 3 (emphasis added). Thus, Plaintiff Rice is not really "fully" retired. Indeed, it is this very exception -- engineering and/or technical work relating to enforcing the '499 Patent -- that most concerns Defendant United States and its contractors, including RRI&MGT. The risk is that Plaintiff Rice will use proprietary information gleaned

from protected documents for purposes other than this litigation, such as in future licensing negotiations or litigation in the district courts.[6] Further, Plaintiff Rice's argument that he no longer engages in licensing (*id.*, p.3) is subject to the same exception. He clearly continues to be engaged in efforts to license the Defendant United States and its contractors under the '499 Patent for activities relating to the WR-21. Thus, Plaintiff Rice is the principal of a business that engages in patent licensing and patent enforcement. Further, by his own admission, he is still occupied professionally[7] on behalf of his own business, notwithstanding that he may be presently retired from work as a consultant to others.

In arguing that he is not a competitor, Plaintiff Rice ignores that he is effectively the "founder, president, CEO, in-house expert and inventor" for his own licensing business. In *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20 (D. Del. 1988), the district court precluded the plaintiff's founder and president, a preeminent aeronautic engineer with more than 60 aeronautic patents, from accessing the defendant's confidential documents. The court reasoned that the plaintiff's founder and president "might (whether consciously or subconsciously) abuse the confidential scientific information revealed to [defendant's] competitive disadvantage." 682 F.Supp. at 21. Plaintiff Rice should similarly be precluded from accessing protected documents in this case. The potential for abuse in connection with his patent licensing and enforcement activities is just as real today as it was in 1997.

---

[6] Plaintiff Rice sued General Electric on January 3, 1994, in the U.S. District Court for the Southern District of Texas, Houston Division (Civil Action No. H-94-0007). Plaintiff Rice alleged that General Electric's LM2500 and LM5000 STIG (Steam Injected Gas) turbine systems embodied inventions claimed in three of his patents. *See* Complaint filed in Civil Action No. H-94-0007 ¶14 (attached as Exhibit 4).

[7] *See* 1997 Letter Of Plaintiff Rice's Attorney (attached as Exhibit 5). Plaintiff Rice is the purported inventor named in at least 15 U.S. patents (in addition to the patent-in-suit) in the field of turbine/rotating equipment technology. Excerpts of these patents are attached as Exhibit 6.

The significance of licensing activities was recently litigated in *IP Innovation, L.L.C. v. Thomson, Inc.*, 2004 WL 771233 *3 (S.D. Ind. April 8, 2004). In that case, plaintiffs argued that their expert should be allowed access to defendant's highly confidential material because he was their only expert and the sole inventor of two of the patents-in-suit. Plaintiffs also argued in *IP Innovation* that they did not manufacture or sell any product in the consumer electronics field and thus were not in direct competition with defendant. In rejecting these arguments, the district court noted that the plaintiffs' expert was a named inventor of over 40 patents with others pending and "[f]inally, and perhaps most importantly," that one of the plaintiffs was "an intellectual property licensing company involved in the commercialization of intellectual property including that developed by [plaintiffs' expert]." 2004 WL 771233 *3. On this basis, the district court concluded that "the risk for abuse is real" and precluded plaintiffs' expert from accessing defendant's highly confidential material.

The case on which Plaintiff Rice relies, *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505 (1996), is inapposite.[8] There, Senior Judge Gibson permitted plaintiff's president, CEO, and inventor to access protected documents. However, this individual had assigned his patents to the plaintiff; the plaintiff was an inactive corporation; and this individual, despite being the corporation's president and CEO, was "not actively involved with" the corporation. 35 Fed. Cl. at 509. In these special circumstances, Senior Judge Gibson found that "defendant has failed to show that there is any greater risk that [this individual] would misuse confidential information as compared to an [independent] aerospace or other technical expert." *Id.* In contrast with *Standard Space Platforms*, where the inventor had assigned his patents and

---

[8] *Standard Space Platforms* was distinguished by the district court in *IP Innovation.*

was no longer actively involved with the plaintiff corporation, Plaintiff Rice himself is a party to the present litigation. He is the patent owner. Further, he is actively involved in the litigation (as evidenced by his declaration attached to his response) and engaged (by his own admission as discussed above) in professional activities relating to enforcing the '499 Patent. Clearly, in distinction with *Standard Space Platforms,* Defendant United States and its contractors have shown here that there is a significantly greater risk that Plaintiff Rice will misuse confidential information as compared to an independent engineer or other technical expert.

Plaintiff Rice argues that, aside from enforcing the '499 Patent, he is no longer active in consulting, publishing technical papers, or filing or prosecuting patent applications. However, there is nothing to prevent him from performing any of these activities in the future. Further, Plaintiff Rice states that he currently owns only the patent-in-suit. However, he does not state whether the current owner of any of the 15 other patents on which he is the named inventor is a company involved in the commercialization of intellectual property, such as the plaintiff in *IP Innovation*, nor does he state whether he owns an interest in or has any connection with the current owner. Therefore, he has not shown that, in the event of licensing, enforcement or further prosecution of any of the other 15 patents, he would not be or become involved.

The 15 other patents on which Plaintiff Rice is the named inventor relate to turbine/rotary equipment technology. Further, the patents refer to Rolls-Royce technology. For example, in U.S. Patent No. 4,550,562, Plaintiff Rice refers to the Rolls-Royce RB211 engine at column 2, lines 24-36:

> Today, engines with cycle-pressure ratios of 20 to 30 have been in service for a number of years (aircraft: CF6, JP9, RB-211; and industrial: LM 2500, LM 5000, and RB-211). Material selection and cooling techniques have been developed to match the expansion of the discs and the rotating blades with the expansion

> of the stator parts, struts and casing to retain acceptable blade-tip clearances. Presently, commercial-jet engines are being developed with cycle-pressure ratios of 38 to 42 and base load firing temperatures of 2250°F. Cycle pressure ratios up to 44 are even now being contemplated.

(Emphasis added). This reference also appears in U.S. Patent No. 4,507,914, at column 2, lines 23-35.

The extent to which Plaintiff Rice relies on the Rolls-Royce RB211 engine is further illustrated by U.S. Patent No. 4,543,781. There, at column 2, lines 38-52, Plaintiff Rice refers to "[a]n integrated propulsion nozzle . . . applied to the 'Rolls-Royce RB-211-535 E4' engine for the 'Boeing 757' aircraft." Plaintiff further states:

> An integrated propulsion nozzle is being applied to the "Rolls-Royce RB-211-535 E4" engine for the "Boeing 757" aircraft. Performance gains giving 2% lower specific fuel consumption are realized where both the fan and the hot-core flows exhaust through a single propelling nozzle. High supersonic drag over the after-body is reduced to a lower subsonic drag. The "RB-211" exit nozzle measures several feet in diameter. However, the same general concept can be applied to very small steam nozzles measuring ten to twenty thousandths of an inch whereby steam with its much lower viscosity, higher specific heat, and higher Mach 1 velocity than air can be substituted in principle for the fan bypass air.

*Id.* (emphasis added). The same language appears in U.S. Patent Nos. 4,565,490; 4,545,197; 4,638,628; and 4,835,958.

Because the WR-21 design is based on the RB211 engine, to which Plaintiff Rice frequently refers in his patents, RRI&MGT is very concerned about the risk that Plaintiff Rice might use protected information relating to the RB211 engine (as well as the WR-21) for some purpose other than the present litigation.

Accordingly, there is little change from the situation that existed in 1997. Plaintiff Rice has again "failed to demonstrate that he is not a competitor with defendant and its contractors." 39 Fed. Cl. at 751. The risk that Plaintiff Rice will obtain an unfair business advantage by accessing protected information remains a real concern. "'Obviously, where confidential material is disclosed to an employee of a competitor, the risk of the competitor's obtaining an unfair business advantage may be substantially increased.'" *Carpenter Technology Corp. v. Armco, Inc.*, 132 F.R.D. 24, 27 (E.D. Pa. 1991), *citing Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471, 1483 (Fed. Cir. 1986), *cert. denied*, 482 U.S. 909 (1987). *Accord Levine v. United States*, 226 Ct. Cl. 701 (1981) (information sought by potential competitor for purposes other than that of the litigation); *Phillips Petroleum Co. v. Rexene Prods. Co.*, 158 F.R.D. 43, 46 (D. Del. 1994) (refusal to add defendant's chief executive to a negotiated protective order because he remained active in the competitive business field related to the protected discovery).

In cases involving competitors, the standard safeguard, which is fair to all concerned, is to limit access to "the receiving party's trial attorneys, and, with prior approval of the disclosing party and written assurances, to independent experts assisting the trial attorneys." *Safe Flight*, 682 F.Supp. 22 (emphasis added; citations omitted). In the present case, the Defendant's proposed Protective Order, which is identical to the Protective Order entered by the Court in 1997, contains these just provisions. *See* 39 Fed. Cl. at 750-51. As this Court stated in its 1997 Decision, "the proposed order at issue here attempts to strike a balance between the protection of proprietary information and plaintiff's ability to prepare his case by providing for plaintiff attorney and independent expert review of protected information." 39 Fed. Cl. at 752. Thus, Plaintiff Rice is wrong to argue that the Defendant's proposed Protective Order is "deficient and unfair." (Pl. Response, p. 1).

**B. Plaintiff Rice Is Not Uniquely Qualified**

Plaintiff Rice does not argue that he is uniquely qualified to review technical information relating to alleged infringement of his patent. Rather, Plaintiff Rice argues that "as the inventor," he is "uniquely qualified to demonstrate how Rolls-Royce's confidential documents prove direct copying by Rolls-Royce in its development of the WR-21." (*Id.*, p. 2).

However, this argument is unavailing for at least four reasons. First, the issue on which Plaintiff Rice is allegedly uniquely qualified -- alleged copying of his invention -- is not relevant to Plaintiff Rice's cause of action in this Court against Defendant United States for infringement. Second, the copying allegation is nonsense as Rolls-Royce, Inc. was in possession of a design for an intercooled marine gas turbine before Plaintiff Rice even conceived his purported invention, much less publicly disclosed it in 1984, as discussed above. Third, Plaintiff Rice has not as yet even attempted to locate a qualified expert to review protected documents -- accordingly, Plaintiff Rice's claim that he is uniquely qualified is purely speculative. Fourth, Plaintiff Rice has no knowledge of RRI&MGT's proprietary research and development information relating to intercooled marine gas turbines and thus would have no advantage over an independent engineer of similar experience in reviewing such proprietary information.

Moreover, Plaintiff Rice's asserted knowledge of "the state of the art in 1983 and 1984, including the engines that Rolls-Royce was using at the time" (Pl. Response, p. 6), is more limited than he appears to realize. For example, at column 3, lines 42-54 of the '499 Patent, Plaintiff Rice represented to the U.S. Patent and Trademark Office that intercooled gas generators with coaxial shafting arrangements were not "even remotely suggested" prior to his purported invention:

> A coaxial shafting arrangement is contemplated whereby the initial (low pressure) compressor is driven by a turbine by means of a shaft running through the high-pressure compressor, the high-pressure turbine and the interconnecting shaft. Coaxial drives are highly developed for high-bypass fan jets and indeed gas generators such as General Electric's LM5000, General Motors (sic) 570K and Rolls-Royce's RB-211. However, no intercooling is used or even remotely suggested. It is the increase in the low-pressure compressor diameter made possible by the intercooling that permits adequate physical space for the air to be exited and readmitted efficiently with a minimum of pressure loss.

However, Plaintiff Rice was wrong about the state of the art prior to his purported invention, as evidenced by Rolls-Royce, Inc.'s 1982 proposal for an intercooled marine gas turbine having a coaxial shafting arrangement.

Although Plaintiff Rice's new allegation of copying is not relevant to the present action against the United States or credible as shown by the 1982 proposal of Rolls-Royce, Inc., the copying allegation indicates that the scope of Plaintiff Rice's interest in RRI&MGT 's proprietary information may not be limited to the present infringement action against the United States. Thus, even if this Court finds that Plaintiff Rice is now fully retired and no longer a competitor, the Court should not permit Plaintiff Rice to have personal access to RRI&MGT's proprietary information, because there is still a risk that Plaintiff Rice will use such information for purposes other than the present litigation.

Plaintiff Rice fails to offer any reason, moreover, why an independent expert would be less able than himself to investigate the alleged copying issue. Plaintiff Rice's mere status as the inventor is insufficient to make him uniquely qualified.

In *Safe Flight*, the plaintiff argued, as Plaintiff Rice in this case, that its President was uniquely qualified and should have personal access to the protected documents. The Court

rejected this argument because plaintiff failed to show that an independent expert would be unable to perform the necessary investigation:

> Applying this precedent to the instant litigation, we rule that Mr. Greene should be precluded from reviewing defendant's confidential materials. First, accepting that Mr. Greene is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from Sundstrand's documents from those he develops from his own ideas. In this regard plaintiff has not assured the Court that Mr. Greene is willing to curtail his future research of wind shear equipment. Second, plaintiff's claim that Mr. Greene is "uniquely qualified" is speculative. Safe Flight has yet to investigate the availability of qualified outside experts. Third, while the inability of plaintiff's counsel to consult its President on the confidential materials may hamper plaintiff's ability to assess the economic merits of this litigation, the Court suggests that the plaintiff might, if necessary in the future, nominate a non-technical officer to make such a business calculation in light of his/her review of the confidential documents, rather than an officer who is also a working scientist of the corporation.

682 F.Supp. at 22 (emphasis added). Here, Plaintiff Rice's claim that he is uniquely qualified should be similarly rejected. As in *Safe Flight*, Plaintiff Rice's claim is speculative because he has yet to investigate the availability of qualified outside experts.

Similarly, in *IP Innovation,* the plaintiff argued that its inventor and general manager was uniquely qualified. The district court rejected these arguments, however, and precluded the plaintiff's inventor and general manager from accessing defendant's documents because the plaintiff was "an intellectual property licensing company involved in the commercialization of intellectual property." The district court stated that the facts there were analogous to those in *Safe Flight*, where the court precluded plaintiff's founder, president and in-house expert from accessing the defendant's confidential documents. Like the plaintiffs in *IP Innovation* and *Safe Flight*, Plaintiff Rice owns the patent-in-suit and is in the business of licensing and enforcing it.

Accordingly, Plaintiff Rice should not be allowed access to protected documents. The mere fact that he is the inventor is insufficient to make him uniquely qualified.

*THK America, Inc. v. Nippon Seiko K.K.*, 141 F.R.D. 461 (N.D. Ill. 1991), cited on page 5 of Plaintiff Rice's response, is distinguishable. In that case, the defendant sought to preclude employees of the plaintiff's parent Japanese company, but not in-house employees of the plaintiff, from accessing defendant's confidential documents. The court refused to preclude such access on the ground that "[b]oth sides should be permitted to look to the internal staff and other resources of their parent corporations for assistance in translating and interpreting Japanese documents, and for other assistance as well. In *THK America*, unlike the present case, defendant raised no objection to permitting plaintiff's in-house employees access to defendant's confidential documents.

Plaintiff Rice's refusal to make any effort to locate a qualified independent expert is somewhat surprising. It is perhaps significant, however, that he also failed to make any attempt to locate a qualified independent expert in the 1997 litigation. One explanation for this behavior is that he just does not want to incur the expense of hiring a qualified independent expert. This is a relatively common and ordinary expense of patent infringement litigation, for which Plaintiff Rice should have made provision on initiating the litigation. Certainly, RRI&MGT's confidential information should not be put in jeopardy merely to save Plaintiff Rice the cost of hiring an independent expert.

In summary, Plaintiff Rice is a competitor in relation to Defendant and its contractors by virtue of his ownership of the patent-in-suit. He has already initiated two actions against the Defendant United States for activities involving the WR-21. He is a threat to initiate other actions as well relating to the WR-21, particularly in view of his new allegation that RRI&MGT

copied his invention. Thus, while Plaintiff Rice may no longer be engaged in consulting for others, he remains involved with licensing and enforcing the '499 patent on behalf of his own business and is therefore a risk to use protected information for purposes other than the instant litigation. Accordingly, he should not be included as a Qualified Person under the Protective Order in this case.

## III. CONCLUSION

For the foregoing reasons, RRI&MGT opposes Ivan Rice's request to be included as a Qualified Person and supports the United States' motion for a Protective Order.

Respectfully submitted,

James A. Oliff
Richard E. Rice
OLIFF & BERRIDGE
700 South Washington Street
Alexandria, VA 22314
(703) 836-6400

Attorneys for Rolls-Royce
Industrial & Marine Gas
Turbines, Ltd.