**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **IVAN G. RICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05-187C** |
| **v.** | ) | |
| | ) | **Senior Judge James F. Merow** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Defendant, the United States, hereby replies to "Plaintiff Rice's Response to Defendant's Motion for Entry of a Protective Order" (the Response) electronically filed July 25, 2005.

In Mr. Rice's previous action (Ct. Fed. Cl. No. 97-246C), asserting that the same accused WR-21 gas turbine engine system infringes the same patent in suit, the Court entered a protective order submitted by the defendant (Motion Exhibit B). *Rice v. United States*, 39 Fed. Cl. 747 (1997). The parties disagree only as to whether Ivan Rice should be a "Qualified Person" entitled to read "Protected Information."[1] As defendant's Motion Exhibits C through F show, defendant's contractors (all "Supplying Owners," as defined by Definition B at Motion Exhibit A, page 2) object to granting the plaintiff the status of a Qualified Person.[2] Supplying Owners Rolls-Royce (upon whom plaintiff's Response solely focused) and Honeywell (formerly, AlliedSignal) will reconfirm

[1] Motion Exhibit A, p. 4. Plaintiff concomitantly changed the numbers (but not the text) of subparagraphs (2) through (7) of defendant's version to, respectively, (3) through (8). *Compare* defendant's version (Motion Exhibit A) with plaintiff's version (Response Exhibit A).

[2] As an aside, drawings and reports issued by the prime contractor, Northrop Grumman (or its predecessor) can often disclose proprietary information of its subcontractors like Rolls-Royce, AlliedSignal (now Honeywell), and/or CAE Electronics (now L-3 MAPPS). This arises since the WR-21 program contractors all shared with each other their proprietary information pursuant to the provisions of a Proprietary Information Exchange Agreement. *See* Motion Exhibit D, p1.

their objections to treating Mr. Rice as a Qualified Person in replies that each will move for leave to file in this resumed action. Defendant's counsel has conferred with counsel for Northrop Grumman, CAE USA Inc., and L-3 MAPPS, and they, too, continue to oppose granting Mr. Rice the status of a Qualified Person for reasons stated herein.

In 1997, in view of the Supplying Owners' objections, the Court ruled that Mr. Rice would not be a Qualified Person and that plaintiff's counsel would be allowed to move the Court to designate Mr. Rice as an independent expert "with respect to specific items of protected information" after showing that no outside expert could be retained for that capacity by plaintiff's counsel. *Rice*, 39 Fed. Cl. at 748, 752. Plaintiff's Response proffers no evidence of unsuccessful attempts to retain an independent expert. *Cf. Amsted Indus. Inc. v. National Castings, Inc.*, 1988 WL 90022, at 1 (N. D. Ill. 1988) ("[P]laintiff's counsel should be able to gain the technical advice it needs from outside experts (to whom the parties agree disclosure [of proprietary information] may be made).").

Despite plaintiff's current arguments, defendant's version of the proposed protective order (Motion Exhibit A) should be entered instead of the plaintiff's version (Response Exhibit A). Relying upon the protective order ruling in 1997, the Supplying Owners authorized sending to plaintiff's counsel thousands of copied pages of proprietary information selected after his inspection that could be reviewed by acceptable independent expert(s), should plaintiff engage any. Mr. Rice was precluded from reviewing the proprietary documents selected. The Supplying Owners appear to have a reasonable concern that their proprietary information may be inadvertently disclosed or improperly used for purposes other than this case even though Mr. Rice currently may be retired. If Mr. Rice is permitted to review the highly sensitive technical information he seeks, even assuming a good faith endeavor to comply with the protective order, he may well find it difficult to remember exactly which information is proprietary and which is not. "It is very difficult for the human mind

to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *BASF Corp. v. United States*, 321 F. Supp. 1373, (Ct. Int'l Trade 2004) (quoting *A. Hirsh, Inc., v United States*, 657 F. Supp. 1297, 1302 (Ct. Int'l Trade 1987)).

The circumstances have not sufficiently changed for plaintiff to overcome his burden to demonstrate that the previous order should be modified for this resumed action to give Mr. Rice access to proprietary information. *Cf., Phillips Petroleum Co. v. Rexene Products Co.,* 158 F.R.D. 43, 46 (D. Del. 1994) ("the burden of demonstrating that an agreed protective order should be modified is on the moving party"). "Where, as here, the proprietary information is technological, a higher degree of protection may be afforded to that information. *E.g., Safe Flight Instrument v. Sundstrand Data Control,* 682 F. Supp. 20, 22 (D. Del. 1988)." *Rice*, 39 Fed. Cl. at 750.

The proposed protective order, like the previous one, expressly delineates the procedure whereby "Supplying Owners" may object to showing any proprietary information to proposed independent experts and obtain the Court's ruling. Motion Exhibit A, ¶ 9, pp. 8-9. The Supplying Owners have again objected to permitting Mr. Rice to be a Qualified Person in this resumed action. Motion Exhibits C to F. The plaintiff is not an independent expert. He owns the reexamined patent in suit. *See Rice*, 39 Fed. Cl. at 751-52. He has a history of litigating and endeavoring to license his patents. As indicated to the Court in 1997, Mr. Rice sued General Electric on January 3, 1994, in the U.S. District Court for the Southern District of Texas, Houston Division (Civil Action No. H-94-007). Therein, he alleged that General Electric's LM2500 and LM5000 STIG (Steam Injected Gas) turbine systems embodied the inventions claimed in three of his patents.[3]

[3] Rolls-Royce has indicated that it will attach a copy of the Complaint in the action against General Electric to its reply.

Mr. Rice recites in his declaration that he reviewed "publicly available documents describing Rolls-Royce's WR-21 intercooled recuperated gas turbine engine and those documents show that the WR-21 appears to include all the elements of claim 1 of my Reexamination Certificate No. B1 4,896,499." Response Exhibit D, ¶ 16. While defendant disputes that all elements of Claim 1 are present in the WR-21, this statement shows that Mr. Rice has no pressing need to review any proprietary information of the Supplying Owners. Defendant's proposed Protective Order (like the previous order) clearly allows the plaintiff's counsel and independent experts acceptable to the Supplying Owners to review Protected Information. Motion Exhibit A, pp. 4, 6-7. This feature preserves Mr. Rice's ability to present his case while, at the same time, protecting proprietary information. *Rice*, 39 Fed. Cl. at 750-51; *Amsted Indus. Inc.*, 1988 WL 90022, at 1.

The due process observations of *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505 (1996) upon which plaintiff relies are inapposite and that case is distinguishable. Plaintiff's unsuccessful argument in 1997 also relied on that case. The plaintiff there, a defunct corporation, wanted to give to its CEO, a life insurance salesman and co-inventor (who had assigned the patent in suit to the plaintiff), access to potentially proprietary documents. Thus, neither the CEO nor the plaintiff corporation was involved in the relevant industry at that time. Unlike this case, there was no previous ruling that the inventor there could not have access to proprietary information. *See Standard Platforms*, 35 Fed. Cl. at 508, 509.

The inventor in this case is the plaintiff who owns, not only the patent in suit, but also others. Records of the United States Patent and Trademark Office (PTO) suggest that Mr. Rice had previously licensed some of his patents to others and had also assigned some of them to others. *See* the PTO "Patent Assignment Assignor Details" and "Patent Assignment Assignee Details" attached as Reply Exhibit A. As the owner of the patent in suit and other patents for which actions could still

could be brought against the Supplying Owners or others, he still is a potential competitor of the Supplying Owners.[4]

Courts have assessed the risks for potential abuse and precluded patent owners or inventors from access to proprietary information sought to prove the cases in which they were involved. *See e.g., Levine v. United States*, 226 Ct. Cl. 701 (1981) (denying personal access to the plaintiff – a patent attorney who held various patents, of proprietary information he sought in efforts to prove his case); *IP Innovation LLC, v. Thomson, Inc.*, 2004 WL 71233 at 2-3 (S. D. Ind. 2004) (denying the inventor of the patents in suit and the general manager of an intellectual property licensing company access to proprietary information).

While Mr. Rice declares that he has no plans to work as a consultant or publish technical articles and has no pending domestic patent applications, his inspection of the Supplying Owner's proprietary information could prompt him to undertake new consultations, write additional technical articles, and file additional domestic and foreign patent applications. *See* Response Exhibit C, ¶¶ 5, 6, 9, and 10. Mr. Rice has failed to assure the Court that he will not in the future engage in any consulting as to gas turbines, or publish technical articles about gas turbines, or file for domestic or foreign patent protection for gas turbines. *See Safe Flight Instrument Corp.*, 682 F. Supp. at 22. Also, here, a risk of harm arises from the possibility of inadvertent, improper future use of proprietary information that, if produced here, is clearly to be used only for this case.

---

[4] Mr. Rice declares his current ownership of but "one patent which is the subject of this infringement action." Response Exhibit C, ¶ 12. According to PTO records, Mr. Rice also owns at least the following additional patents for which the six year period of limitations on damages under 35 U.S.C. § 286 has not expired: U.S. Patent Numbers 4,507,914; 4,592,204; and 5,628,183. *See* PTO search results list of U.S. Patents Issued to Inventor, Ivan G. Rice, and the first sheets each of those patents attached as Reply Exhibit B. His declaration does not mention or discuss any foreign patents that he may own.

Mr. Rice's status as the owner and inventor of the patent in suit does not entitle him to special treatment and unlimited access to proprietary information. As was aptly observed by the Federal Circuit: "the fact that [a proffered witness] may have particularized knowledge and experience as a co-inventor of the claimed invention does not necessarily mean he also has particularized knowledge and experience in the structure and working of the accused device." *Air Turbine Technology, Inc. v. Atlas Copco AB*, 410 F.3d 701, 714 (Fed. Cir. 2005) (no abuse of discretion to conclude that the testimony amounted to improper expert testimony). That observation applies equally to this case. Thus, contrary to plaintiff's argument in the Response at page 5, the reasoning of *THK America, Inc. v. Nippon Seiko K. K.*, 141 F.R.D. 461, 462 (N.D. Ill. 1991) concerning access for the alleged most knowledgeable person should not be applied to this case. *Safe Flight Instrument Corp.*, 682 F. Supp. at 22 ("[P]laintiff's claim that [its President] is 'uniquely qualified' is speculative. [Plaintiff] has yet to investigate the availability of qualified outside experts."). Plaintiff's counsel can render advice to his client with respect to this litigation with general references to the materials produced as long as Protected Information content is not disclosed. Motion Exhibit A, ¶ 18 at p. 11.

Also, Mr. Rice is not likely to be the most knowledgeable person as to the configuration and operation of the accused WR-21 system. There is no evidence that he ever worked on the WR-21 program for any of defendant's contractors or observed construction or operation of the system. The Court has already ruled that plaintiff is to use an independent expert, not Mr. Rice, to review pertinent proprietary data produced. Mr. Rice, as an interested plaintiff, has no special advantage over an independent expert in efforts to objectively review and interpret the Supplying Owners' proprietary information pertaining to the accused system in the context of reexamined Claim 1 as

properly construed.[5]

Much of plaintiff's Response discusses the allegations that Rolls-Royce copied plaintiff's claimed invention and that Mr. Rice needs to review the documents to uncover proof for his case. Response at pp. 5 to 7. The copying allegation is new and is not made in the Amended Complaint.

Following the 1997 instructions of the Court noted above at page 2, after review of the documents produced that are proprietary to Rolls-Royce by plaintiff's counsel or an acceptable independent expert, plaintiff is free to try to make a showing that "specific items of protected information" should be shown to Mr. Rice because of his "alleged insight into the circumstances of how Rolls-Royce developed the WR-21 using his invention" and that an independent expert capable of appreciating pertinent development circumstances could not be located and retained by plaintiff's counsel. *See* Response, pp. 4-5. There is no need for Mr. Rice to inspect voluminous documentation that is proprietary to Rolls-Royce.

Moreover, the copying argument is speculative and is predicated upon alleged access in 1984 and alleged copying, years later, in a system developed under a contract not awarded until December 1991. Mr. Rice's 1984 paper does not describe hardware actually built. *See* Response Exhibit D. Whether that paper actually discloses a gas turbine system having all of the limitations of reexamined Claim 1– a matter in dispute – is an issue for later determination. Moreover, in view of its actual experience in developing useable hardware, Rolls-Royce had no incentive to copy the untried proposals of a latecomer.[6]

---

[5] The Reexamination Certificate is attached as Reply Exhibit C and includes the text of Claim 1 at col. 4, ln. 38, through col. 5, ln. 3.

[6] Mr. Rice's publication in June 1984 of an article in the field of intercooled turbines occurred long after the Navy and the industry including Rolls-Royce became involved. The Bowen and Ness paper (attached as Reply Exhibit D and cited during reexamination) was published in

For the above-stated reasons, Mr. Rice should not be granted the status of a Qualified Person under the Protective Order to be issued. The defendant respectfully requests that the Protective Order version of Exhibit A attached to "Defendant's Motion for Entry of a Protective Order" be entered.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

August 8, 2005

s/ B. Frederick Buchan, Jr.

B. FREDERICK BUCHAN, JR.
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Phone: (202) 307-0335
Facsimile: (202) 307-0345
frederick.buchan@usdoj.gov

Attorneys for the United States

OF COUNSEL:
KEN B. BARRETT
Attorney
Department of Justice

April 1982 and shows that the Navy had been involved since at least 1980 in investigating and developing intercooled recuperative engines. Also, in 1982, the Navy publicized negotiations of contracts with each of Rolls-Royce and General Electric to acquire technical data for their respective intercooled, regenerative-cycle gas turbines. Attached Reply Exhibit E, Issue No. PSA-8193, *Commerce Business Daily*, October 21, 1982. In addition, the Bowen and Groghan paper published in May 1984 (attached as Reply Exhibit F) that was cited during reexamination further publicizes the fact that Rolls-Royce and others were making intercooled gas turbine engines. Reply Exhibit C, first sheet; Reply Exhibit F, *see* particularly pp. 262 -265, 268 and 271.

# INDEX TO ATTACHED REPLY EXHIBITS


| Reply Exhibit No. | Description | Reply Text Page(s) Cited |
| --- | --- | --- |
| A | (1) PTO's "Patent Assignment Assignor Details" for Patent Agreement between Ivan G. Rice and General Electric Company recorded October 20, 1995, 1 p., and (2) PTO's "Patent Assignment Assignee Details"Assignment of Assignor's Interest recorded July 7, 1999, 1 p. | 4 |
| B | PTO "Results of Search" for U.S. Patents Issued to Inventor, Ivan G. Rice (2 pp.) and the first sheets only of each of U.S. Patent Nos. 4,507,914; 4,592,204; and 5,628,183. | n.4 at 5 |
| C | Reexamination Certificate B1 4,896,499 [marked as Exhibit B to Plaintiff's First Amended Complaint]. | n. 5 at 7, n.6 at 8 |
| D | T.L. Bowen and J. C. Ness, "Regenerated Marine Gas Turbines, Part I: Cycle Selection and Performance Estimation," ASME Paper No. 82-GT-306 (April 1982), pp. 1-12 [cited in the first sheet of Reply Exhibit C]. | n. 6 at 7 |
| E | Issue No. PSA-8193, *Commerce Business Daily* (October 21, 1982), one page. | n. 6 at 8 |
| F | T.L. Bowen and D.A. Groghan, "Advanced-Cycle Gas Turbines for Naval Ship Propulsion," *Naval Engineers Journal*, (May 1984), pp. 262-71 [cited in the first sheet of Reply Exhibit C]. | n. 6 at 8 |