**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically filed August 8, 2005)

| | | |
|---|---|---|
| IVAN G. RICE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-187C |
| v. | ) | |
| | ) | Senior Judge James F. Merow |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NONPARTY HONEYWELL'S REPLY TO PLAINTIFF RICE'S RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Nonparty Honeywell International, Inc. ("Honeywell") appears specially[1] to reply to Plaintiff Rice's Response to Defendant's Motion for Entry of a Protective Order. Plaintiff should not be included as a "Qualified Person" because: (1) documents to be produced in this litigation contain highly sensitive and confidential technical information that is proprietary to Honeywell; (2) in view of Plaintiff's status as an inventor, author, litigant, and patent owner, disclosure of Honeywell's confidential technical information to him would result in an undue risk of competitive harm; and (3) Defendant's proposed Protective Order does not create an unfair burden on Plaintiff.

## BACKGROUND

This is an action brought under 28 U.S.C. §§ 1491(a) and 1498(a) by plaintiff Ivan G. Rice seeking compensation for both an alleged Fifth Amendment taking and infringement of Claim 1 of United States Patent Reexamination Certificate No. B1 4,896,499 (the "reexamined '499 patent") arising from assembly, test, and operation of the WR-21 Intercooled Recuperated

[1] By this special appearance, Honeywell does not subject itself to the jurisdiction of the Court. *See Uram v. United States*, 216 Ct. Cl. 418, 420 (1978).

("ICR") Gas Turbine Engine Systems (the "accused ICR Systems") in Philadelphia, Pennsylvania in 1999. Honeywell is a subcontractor for the design and development of the ICR systems.

Mr. Rice previously filed suit in this court, No. 97-246C ("previous case"), alleging that the accused ICR systems infringed the reexamined '499 patent. Mr. Rice voluntarily dismissed this suit after initial discovery. During the previous case, under similar circumstances, this Court entered a Protective Order and ruled that Mr. Rice may not have access to confidential information unless he was unable to locate an independent expert. *Rice v. United States*, 39 Fed. Cl. 747 (1997) (copy is attached at Defendant's opening brief as Exhibit B).

Although not yet served in this matter, based on the discovery requests filed in the previous case, Honeywell expects Plaintiff to serve broad-sweeping document requests seeking, *e.g.*, "all documents relating to the ICR systems," "all documents that relate to the manufacture of ICR systems for the Defendant," and "all documents that relate to the procurement, purchase, acquisition or delivery schedule of ICR systems." (Portions of the documents requests are attached to the Declaration of Vigen Arefian ("Arefian Decl.," attached hereto at Exhibit A, as Exhibit 1.) Many of the documents likely to be requested by plaintiff contain highly sensitive proprietary technical information. (*See* Arefian Decl., at ¶¶3 and 7.)

On July 7, 2005, Defendant filed Defendant's Motion for Entry of a Protective Order ("Defendant's Motion") to preserve the confidentiality of documents and information produced in the course of this litigation. Defendant's proposed Protective Order (attached as Exhibit A to Defendant's Motion) contains nearly identical terms to the one entered by this Court in the previous litigation and would allow the defendant and/or Supplying Owners such as Honeywell and other government contractors and subcontractors to designate as "Protected Information,"

any material that "contains trade secrets, technical know-how, or other business data." (Defendant's proposed Protective Order at 3-4.) Once material is so designated, access to that material is limited to "Qualified Persons." (Defendant's proposed Protective Order at 5-7.) The term "Qualified Person" is defined to include, *inter alia*, "the attorney of record and other outside attorneys for Rice, their legal assistants and support staff members," and "designated independent experts … retained by each party solely for the purpose of assisting in this action." (Defendant's proposed Protective Order at I.) Plaintiff is not included as a "Qualified Person" under Defendant's proposed Protective Order.

On July 25, 2005, Plaintiff filed an opposition to Defendant's Motion for Entry of a Protective Order, agreeing to all proposed terms except Paragraph I. Paragraph I(6) excludes Plaintiff from qualifying as a "Qualified Person" because he is not an "independent expert." When faced with similar circumstance in the prior case, this Court entered a protective order precluding Mr. Rice from being a "Qualified Person." In his opposition, however, Plaintiff alleges that circumstances have changed since this Court's entry of its Protective Order in the prior litigation.

## DISCUSSION

### A. There Is "Good Cause" For Restricting Plaintiff's Access To Honeywell's Proprietary Information Due To The Potential For Its Improper Use.

#### 1. Technological Information Requires Special Judicial Protection.

RCFC 26(c) provides:

> Upon motion by a party or by the person from whom discovery is sought, …. and for good cause shown, the court may make any order which justice requires … including … (7) that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a designated way ….

The documents likely to be produced by the government in response to Plaintiff's anticipated document requests include sensitive proprietary detailed technical information supplied by Honeywell relating to the development and manufacture of components of the ICR systems. (Arefian Decl., at ¶¶ 2-4 and 7.) This information was developed by Honeywell at great cost, and its commercial value and utility depends upon its confidentiality. (*Id*. at ¶¶ 3 and 5.) Disclosure of this information to Honeywell's competitors pose a risk of severe economic harm. (*Id*. at ¶ 5.) This information could be used, for example, to enable competitors to enhance their technological developments, to avoid or minimize their research and development costs, and/or to develop patent positions that restrict Honeywell's freedom to use certain technologies. (*Id*. at ¶5b.)

Courts have recognized that proper restrictions must be employed to protect the confidentiality of technical information that is produced in discovery. "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc*, 682 F. Supp. 20, 22 (D. Del. 1988); *see also Phillips Petroleum Co. v. Rexene Prods. Co.*, 158 F.R.D. 43, 46 (D. Del. 1994) (recognizing "the need to afford fuller protection to technological information than what is extended to ordinary business information"). Indeed, there are numerous decisions limiting the disclosure of technical information to the receiving party's trial attorneys and outside experts. *See Safe Flight*, 682 F. Supp. at 22 and cases cited therein. Thus, in view of the proprietary technical nature of the Honeywell confidential information relating to the ICR systems, this information must be shielded from disclosure to those persons who might potentially, either inadvertently or intentionally, disclose or improperly use the information.

**2. Plaintiff Is A Technology Competitor Of Honeywell.**

Plaintiff is an inventor, author, and patent holder in the field of gas and steam turbines and rotating equipment. While Mr. Rice is not a manufacturer of gas turbines, this does not mean that he is not a competitor of Honeywell. Mr. Rice is an inventor, has authored many published articles and reports, has applied for and been granted several patents, is asserting one of those patents, as understood by Honeywell, all in fields of technology directly relevant to Honeywell's business. Indeed, contrary to Mr. Rice's assertion based on present information, three of those patents, U.S. Patent Nos. 4,507,914; 4,592,204; 5,628,183, can still be asserted. Moreover, this is not the first patent lawsuit that Mr. Rice has brought against a member of the power generation industry: in 1994, Mr. Rice sued his former employer, General Electric. Although Mr. Rice asserts that he is "fully retired from his work as a consultant" and is "not active in any engineering and/or technical work whatsoever," he has not actually agreed to refrain from these competitive professional activities in the future. Indeed, Mr. Rice instituted the instant action during his "full" retirement.

In view of Mr. Rice's status and activities there are many potential ways that Honeywell's confidential technical information could be misused by Mr. Rice, intentionally or inadvertently, to the detriment of Honeywell. Mr. Rice cannot be expected to separate in his mind information that he learned from reading protected documents in the course of this litigation from information that he might have learned from other, unrestricted sources. *See, e.g., Safe Flight*, 682, F. Supp. At 22 ("accepting that [plaintiff's president] is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from [defendant's] documents from those he develops from his own ideas"); *Phillips Petroleum*, 158 F.R.D. at 46 (echoing similar concerns). For example, Mr.

Rice could misuse Honeywell's confidential information to improve upon his own inventions and then apply for patents that would restrict Honeywell's ability to further develop its own technology. Mr. Rice might also engage in a fishing expedition to determine if other of his patents can be asserted. Because Mr. Rice has not agreed to refrain from publishing or consulting activities, it is also possible that Mr. Rice could inadvertently disclose Honeywell's confidential information in future publications or consulting arrangements, thereby destroying its competitive value.

In view of the potential for competitive harm, courts have issued protective orders precluding litigants in Plaintiff's position from gaining access to their opponent's confidential technical information. In *Levine v. United States*, the Court of Claims upheld a protective order denying an individual plaintiff access to confidential documents because of his status as a patent attorney and holder of various patents. 226 Ct. Cl. 701 (1981). The Court concluded that the government's suppliers had a legitimate interest in restricting the plaintiff's personal access to their confidential information because if he were given such access, the plaintiff would "be in a position to obtain critical 'paper' patents which might jeopardize future product development . . . ." *Id.* at 704.

Similarly, in *Lockwood v. American Airlines, Inc.*, the court upheld a protective order that denied a plaintiff-patent owner access to the defendant's confidential documents. The plaintiff admitted he was "actively engaged in the business of inventing and patenting travel reservation systems … [and was] always considering possible improvements to his patented technology and … intend[ed] to apply for patents on them, if such improvements occur[red] to him." *Lockwood v. American Airlines, Inc.*, No. 91-164-E(CM), 1992 U.S. Dist. LEXIS 22077 at *3-4 (S.D. Cal. 1992), *later decision vacated on other grounds sub nom. In re Lockwood*, 50 F.3d 966 (Fed.

Cir.), *vacated by American Airlines v. Lockwood*, 515 U.S. 1182 (1995). The court held that "plaintiff's patents and efforts to obtain more patents place[d] him in sufficient competition with defendant in the travel reservation system market that an 'attorney's eyes only' designation on certain confidential documents [was] appropriate." *Id* at *4; *see also Safe Flight*, 682 F. Supp. at 22 (denying plaintiff's president access to defendant's confidential technical information because he was an engineer and a holder of many patents, and was not willing to curtail his future research activities).

Thus, in order to avoid the improper misuse or inadvertent disclosure of Honeywell's confidential information, such information should be shielded from disclosure to Mr. Rice.

**B. Defendant's Proposed Protective Order Strikes An Acceptable Balance Between Competing Interests.**

The Protective Order submitted by the Defendant strikes an acceptable balance between Plaintiff's interest in efficient preparation of his case and the potential injury to Honeywell and to the other manufacturers from disclosure of their confidential information to Mr. Rice. First, this Court ordered entry of a virtually identical Protective Order in the prior litigation under similar circumstances. As in the present situation, Mr. Rice, at that time, had no consulting agreements, and was in apparent "semi-retirement," and had ceased attending professional conferences and publishing articles. (*See* Plaintiff's Response at 3-4 and letter dated July 17, 1997 from Douglas H. Elliott attached hereto as Exhibit B.) Under those similar circumstances, this Court determined that the interest in protecting highly sensitive confidential materials outweighed Mr. Rice's interest to personally review that information.

Second, although the Protective Order allows the government and/or Supplying Owners to designate materials as "Protected Information," that designation may be challenged by any party. If the parties cannot resolve such a dispute informally, the objecting party may seek relief

from the Court, and the designating party or Supplying Owner bears the burden of proving that the challenged designation is proper. (Defendant's proposed Protective Order at 15.)

Third, even as to those materials deemed to be Protected Information, the Order does not deny Plaintiff the use of the materials, but only precludes Mr. Rice himself from having access to the documents. Nothing prevents Mr. Rice from retaining an independent expert to review the documents for him. Indeed, Mr. Rice does not explain why such an alternative is not acceptable. *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (protective order "strikes a reasonable balance between [the parties'] interests by shielding Brown Bag's in-house counsel from personal knowledge of a competitor's trade secrets, but allowing access to information through an independent consultant"); *Levine*, 226 Ct. Cl. at 704 (protective orders precluding plaintiff-patent owner's access to confidential materials "strike an acceptable balance between potential injury and preparation of the case").

## CONCLUSION

For all of the foregoing reasons Defendant's Motion for Entry of a Protective Order should be granted.

Dated: August 8, 2005

Respectfully submitted,

_s/ Daniel S. Herzfeld___________
Daniel S. Herzfeld
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 770-7900
(703) 770-7901 (facsimile)

*Attorney for Nonparty,*
*Honeywell International, Inc.*

Of Counsel:
Lawrence J. Gotts
Aslan Baghdadi
David C. Isaacson
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 770-7900
(703) 770-7901 (facsimile)