**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **IVAN G. RICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. _05-187C_** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Senior Judge James F. Merow** |
| **Defendant.** | ) | |

**PLAINTIFF RICE'S REPLY CONCERNING THE PROTECTIVE ORDER**

This Reply is being filed as a collective response to the oppositions filed by the Defendant[1] and certain Manufacturers[2] (collectively herein, "Opposers") to Plaintiff Ivan G. Rice's ("Rice") request to be included as a "Qualified Person" under the Protective Order.

Summary

Opposers have not disputed the fundamental premise that if Rice is a non-competitor he should be listed as a "Qualified Person" under the Protective Order. Opposers have gone to great lengths to cast Rice as a "competitor." They have argued that Rice's status as a plaintiff makes him a competitor; that Rice is currently engaged in licensing activities and thus is a competitor; that Rice's ownership of expired patents makes him a competitor; that the threat of Rice's future disclosure of confidential

[1] Defendant's opposition brief is entitled "Defendant's Reply To Plaintiff's Response To Defendant's Motion For Entry Of A Protective Order."

[2] Rolls-Royce Industrial & Marine Gas Turbines Ltd. ("Rolls-Royce") submitted a brief entitled "Opposition Of Non-Party Rolls-Royce Industrial & Marine Gas Turbines, Ltd. To Plaintiff Ivan G. Rice's Request To Be Included As A 'Qualified Person' Under The Protective Order" and Honeywell International, Inc. ("Honeywell"), filed a brief entitled "Nonparty Honeywell's Reply To Plaintiff Rice's Response To Defendant's Motion For Entry Of A Protective Order."

information makes him a competitor. However, all of these arguments fall short. Rice is not a competitor. As previously stated, Rice is fully retired. Rice is not at all active in consulting, publishing technical papers, or filing and prosecuting patent applications. Furthermore, copying is very relevant to this case and Rice is uniquely qualified to demonstrate Rolls-Royce's copying. Opposers' arguments do nothing to change these facts.

## Argument

### 1. Rice is a non-competitor.

Opposers argue that "[b]ecause [Rice] asserts patent rights in the WR-21 engine, Plaintiff Rice is a 'competitor' to anyone who imports, makes, uses or sells that engine in the United States." (Rolls-Royce Br. at 1.) This statement distorts the law because plaintiffs asserting patent rights are not per se competitors. A premise that all plaintiffs are per se competitors would obliterate any meaningful distinction between a "competitor" and a "non-competitor." Such a broadly sweeping premise would severely hinder any patent owner — no matter how far removed from the competitive market — from meaningful participation in his case.

Opposers argue that Rice is a competitor because he "clearly continues to be engaged in efforts to license the Defendant United States and its contractors under the '499 patent for activities related to the WR-21." (Rolls-Royce Br. at 5.) Opposers go so far as to equate Rice's assertion of his patent rights with that of a "principal of a business that engages in patent licensing and patent enforcement." In support, Opposers place heavy emphasis on ***IP Innovation L.L.C. v. Thomason, Inc.***, 2004 U.S. Dist. Lexis 6290 (S.D. Ind. April 8, 2004). That case is inapposite. There, the district court noted that the

plaintiff was the named inventor on over 40 patents "with other patents currently pending" and "[f]inally, and perhaps most importantly," that "TLC [Technology Licensing Corporation] is an intellectual property licensing company involved in the commercialization of intellectual property including that developed by [plaintiff's expert]." 2004 U.S. Dist. Lexis 6290 *4. Rice has neither formed a company to commercialize intellectual property nor does he currently have any patent applications pending before the United States Patent and Trademark Office.

Opposers argue that Rice is a competitor because he owns "at least the following additional patents for which the six year period of limitations on damages under 35 U.S.C. § 286 has not expired: U.S. Patent Numbers 4,507,914; 4,592,204; and 5,628,183." (Def. Br. at 5). Opposers have cited no case law that supports the proposition that merely owning patents (particularly expired patents) makes one a competitor.

Opposers argue that Rice is a competitor because "nothing" prevents him from disclosing confidential information while participating in future activities involving consulting, publishing technical papers, or filing and prosecuting patent applications. However, preventing such disclosure is the primary reason a Protective Order will be entered in this case. The Protective Order provides safeguards preventing any future disclosure of Opposers' confidential information by Rice and others. Paragraph 32 of both Plaintiff's and Defendant's proposed Protective Orders states that "[t]he provisions of this Protective Order shall survive and remain in full force and effect after the termination of this suit." As a "Qualified Person," Rice's future activities are subject to

the terms of the Protective Order, and he is subject to the contempt powers of this Court should he violate the Protective Order.

Rolls-Royce relies on the Declaration of Martin J. Duckworth executed on August 29, 1997, nearly eight years ago, for the proposition that Rice poses a competitive threat to Rolls-Royce. The Declaration fails to take into account Rice's changed circumstances. In paragraph seven of his declaration, Mr. Duckworth states that "an inventor working in the field of turbine/rotary equipment technology, such as Ivan G. Rice, would cause potentially irreparable injury to Rolls-Royce." Aff. of Martin J. Duckworth ¶ 7 (Aug. 29, 1997). Even if applicable seven years ago, Mr. Duckworth's conclusion of potential irreparable injury is based on a premise that is no longer true — Rice no longer works in the field of turbine/rotary technology.

Opposers also rely on ***Lockwood v. American Airlines, Inc.***, 1992 U.S. Dist. LEXIS 22077 (S.D. Cal. 1992). But in ***Lockwood***, the court held that the plaintiff was a "competitor." The plaintiff was "admittedly actively engaged in the business of inventing and patenting [the technology at issue] and the plaintiff also admitted that he was "always considering possible improvements to his patented technology and he intends to apply for patents on them, if such improvements occur to him." 1992 U.S. Dist. LEXIS 22077 at *3-4 (emphasis added). That case is inapplicable here. Unlike the plaintiff in ***Lockwood***, Rice is not actively engaged in inventing in the field of turbine/rotary technology and has no intention of applying for patents on improvements to his patented technology.

Opposers further rely on ***Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.***, 682 F. Supp. 20, 22 (D. Del. 1988), often cited as a leading case on

whether in-house counsel should have direct access to confidential documents under a protective order. But that case involved direct competitors. The court stated that "[t]he potential for competitive loss is real. [Both parties] directly compete in the market for avionics equipment." ***Id.*** at 21 (emphasis added). Further, the court also stated that "[t]he potential for abuse is real. Mr. Greene actively plies aeronautic engineering." ***Id.*** Rice does not actively ply gas turbine engineering.

In ***Levine v. United States***, 226 Ct. Cl. 701, 704 (1981), the reason given by this Court for denying Mr. Levine access to confidential documents was that he "desires the confidential materials for purposes other than that of this litigation." The Court noted his "alleged statements that he might become a competitor," and that he might "use the information to manufacture competing products." ***Id.*** Those reasons simply do not exist here.

Therefore, neither the Opposers legal nor factual arguments change the fact that Rice is a non-competitor and for this reason should be included as a "Qualified Person" under the Protective Order.

2. Rice Is Uniquely Qualified to Show Rolls-Royce's Copying.

Opposers argue that copying is not relevant and that Rice's ability to demonstrate Rolls-Royce's copying does not make him uniquely qualified. Opposers are wrong as a matter of well-settled law. Copying is relevant. This Court has held that evidence of copying is relevant to non-obviousness and the validity of the patent. ***See Standard Mfg. Co. v. United States***, 25 Cl. Ct. 1, 230 (1991). In ***Standard***, this court found that the

infringer copied the invention disclosed in the patent at issue. ***See id.*** at 229. Explaining the legal relevance of copying this Court stated:

> As stated by the Court of Appeals for the Federal Circuit another of the secondary considerations indicating nonobviousness is copying by the alleged infringer of the invention in preference to the prior art. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d at 1569. Alternatively stated, "copying the claimed invention, rather than one in the public domain, is indicative of non-obviousness". *Windsurfing International, Inc. v. AMF Inc.*, 782 F.2d 995, 1000 (Fed. Cir.), cert denied, 477 U.S. 905 (1986).

***Standard,*** 25 Cl. Ct at 229-30. This Court based its conclusion that the patent was non-obvious and valid in part on "the copying of the invention" by the infringer. ***See id.*** at 241. Hence copying is clearly relevant.

Rolls-Royce argues that "Rolls-Royce, Inc. submitted its design for an intercooled marine gas turbine to the U.S. Navy two years prior to the date when Mr. Rice alleges he first publicly disclosed his own purported invention." (Rolls-Royce Br. at 3). As proof, Rolls-Royce submitted an excerpt from a proposal for a 1982 intercooled engine (called the "Spey"). However, this 1982 intercooled engine is a red herring. What Rolls-Royce fails to mention is that this 1982 intercooled engine was never built. It was a failure. After Rice disclosed his invention, Rolls-Royce developed a modified RB-211 engine, as Rice suggested at the 1984 Amsterdam Conference. Moreover, it was not the 1982 Intercooled Spey engine that was used in the infringing WR-21. Rather it was the later-developed RB-211 engine. The fact that Rolls-Royce blatantly copied is relevant to non-obviousness of his invention and hence to the validity of the patent.

Rice is uniquely qualified to review Rolls-Royce's development and design documents and participate in depositions of Rolls-Royce engineers. These documents are expected to serve as compelling evidence of copying by Rolls-Royce and rebut

arguments of "independent development." Not only is Rice the inventor of the technology at issue, but he also has insight into the circumstances of how Rolls-Royce developed the WR-21 using his invention. He needs access to Rolls-Royce documents to help him prove his case. He knows the people involved, can point to the important documents, and needs to be able to participate in discovery. No other person has Rice's personal knowledge (e.g. interactions at the 1984 Amsterdam Conference where he disclosed his invention) or his technical expertise. Further, Rice was fully aware of the state of the art in 1983 and 1984, including the engines Rolls-Royce was using at the time, and is best qualified to refute Rolls-Royce's argument of "independent development." Prohibiting him from reviewing the Rolls-Royce documents would severely hinder those efforts.

Plaintiff Rice believes a great deal of the evidence of Rolls-Royce copying can be found in Rolls-Royce's own documents. But only as a "Qualified Person" will Rice have access to Rolls-Royce's WR-21 development documents, allowing him to follow the paper trail that proves Rolls-Royce's direct copying of his invention. Accordingly, Rice submits he is uniquely qualified to analyze those documents.

## Conclusion

Defendant's Motion For Entry of A Protective Order should be denied. Instead,

Plaintiff's proposed Protective Order, which includes Rice as a "Qualified Person" with access to "Protected Information," should be entered.

Respectfully submitted,

Dated: August 15, 2005

s/ Douglas H. Elliott
Douglas H. Elliott
Attorney-in-Charge
Moser, Patterson & Sheridan, LLP
3040 Post Oak Blvd., Suite 1500
Houston, Texas 77056
Tel (713) 623-4844
Fax (713) 623-4846
ATTORNEY FOR PLAINTIFF