**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| IVAN G. RICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-187C |
| v. | ) | |
| | ) | Senior Judge James F. Merow |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT FOR THE ORDER OF AUGUST 24, 2005**

Counsel for plaintiff and defendant have conferred and submit this Joint Status Report pursuant to the Court's Order filed August 24, 2005 (the Order). As discussed below in detail, plaintiff's counsel negotiated through defendant's counsel with counsel for the Supplying Owners as to mutually satisfactory terms to be incorporated in the Protective Order. No agreement has been reached as to conditions for any access by the plaintiff, Ivan G. Rice, to any protected information of the Supplying Owners. In the current context, while further efforts to agree may be somewhat feasible, they are unlikely to be productive.

**I. Statement by Plaintiff, Rice.**

The Court's Order dated August 24, 2005 instructed counsel for plaintiff and defendant to explore with Supplying Owners and plaintiff the possibility of reaching agreement(s) between plaintiff and Supplying Owners concerning terms that would permit access by plaintiff to their proprietary information, or portions thereof, and would cover the restriction(s) as to future activity by plaintiff that would be necessary to provide the requisite level of assurance that plaintiff is not, and will not become, a competitor.

In accordance with that Order, Plaintiff's counsel mailed a letter dated August 25, 2005,

attached as Exhibit A, inviting the defendant and all the Supplying Owners to propose terms that "would provide the requisite level of assurance that plaintiff is not, and will not become, a competitor."

On September 16, 2005, Plaintiff's counsel contacted Defendant's counsel by telephone, inquiring about the status of the proposal. Defendant's counsel indicated the Supplying Owners' concern with Plaintiff's patent infringement suit in Texas against two of the Supplying Owners (Rolls-Royce and Honeywell) relating to the same patent and the same engine design, i.e., the WR-21. However, the infringing WR-21 engines that are the subject of the Texas case are being made for the French and British navies, not the United States Government. Also, unlike the present case against the Government, the infringing activities of Rolls-Royce and Honeywell are not protected by 28 U.S.C. Section 1498 in the Texas case.

During the telephone call, Plaintiff's counsel asked whether the Supplying Owners intended to propose terms under which Mr. Rice would be permitted to review proprietary information under this Court's Protective Order. Defendant's counsel did not identify any proposal but asked if Mr. Rice would be willing to agree to completely foreclose himself from any consulting work and agree to never file any patent applications or publish any technical papers. Plaintiff's counsel did not agree to a total foreclosure, but as a compromise, did state that Mr. Rice would agree to a procedure (later set forth in the September 28, 2005, letter, attached as Exhibit C) whereby Mr. Rice would first submit the identities of any prospective consulting clients, patent applications, or technical articles, for review and approval by the Supplying Owners, to insure that none of their confidential information was included.

On September 23, 2005, Defendant's counsel mailed a letter to Plaintiff's counsel, stating

the Supplying Owner's proposed terms under which Mr. Rice would be permitted to review Proprietary Information. Those proposed terms are contained in the letter attached hereto as Exhibit B.

On September 28, 2005, Plaintiff's counsel mailed a letter to Defendant's counsel, containing Mr. Rice's proposed procedure, which strikes a balance, by permitting the Defendant and Supplying Owners to review any proposed patent applications, technical articles, or consulting engagements, by Mr. Rice, to insure they do not contain or are based on any proprietary information of Supplying Owners, and to permit the Court to make the final decision in the event of a disagreement.

Plaintiff requests that the Court incorporate the procedure set forth in Exhibit C as part of the Protective Order.

**II. Statement by Defendant, the United States of America.**

On August 25, 2005, plaintiff's counsel sent the letter, attached as Exhibit A, to counsel for defendant and the Supplying Owners. In summary, this letter asked them to confer and send a joint written proposal for "terms that would permit access by plaintiff to [the Supplying Owners'] proprietary information, or portions thereof, and would cover the restriction(s) as to the future activity by plaintiff that would be necessary to provide the requisite level of assurance that plaintiff is not, and will not become, a competitor." Defendant's counsel emailed the Order and another copy of the Exhibit A letter to counsel for the Supplying Owners on August 30, 2005.

On September 2, 2005, the plaintiff filed a suit in the Eastern District of Texas against two of the Supplying Owners (Honeywell International and Rolls Royce) for infringement of the same reexamined patent that is asserted in this action in the Court of Federal Claims. Defendant's counsel was unaware of the pendency of this action until September 7, 2005.

Defendant's counsel continued conferring with counsel for the Supplying Owners and telephoned plaintiff's counsel on September 16, 2005. At that time, defendant's counsel noted plaintiffs' status as an active litigant and inquired whether the plaintiff would agree to foreclose himself from future consulting work on gas turbines and from filing patent applications concerning gas turbines and from writing and publishing articles about gas turbines. Plaintiff's counsel rejected such a foreclosure and proposed to identify in advance those with whom the plaintiff would consult and, further, to submit any future patent applications and technical articles concerning gas turbines to the Supplying Owners for review for proprietary information prior to any filing or publication. Plaintiff's counsel indicated a desire for blanket permission for Mr. Rice to make the initial review of unidentified, Government maintained documents offered for inspection under the Protective Order and select those to be copied for production.[1] He also indicated that the plaintiff would be hiring an independent expert for the Texas litigation. Defendant's counsel relayed to counsel for the Supplying Owners the substance of the September 16 telephonic discussion.

After further conferring with and obtaining the approval of counsel for the Supplying Owners, defendant's counsel on September 23, 2005, emailed to plaintiff's counsel the letter attached as Exhibit B. In summary, this letter noted that the concerns of the Supplying Owners about Mr. Rice's competitive status had been heightened by plaintiff bringing the infringement action in Texas and explained why plaintiff's proposed pre-consultation/pre-filing/pre-publication approval process for Mr. Rice's future consultations, patent applications, and technical articles was unsatisfactory. This letter clearly stated that Mr. Rice "should continue to be precluded in

[1] Pursuant to Paragraph 4 of the Protective Order, such initial review by Mr. Rice would occur prior to any notification to any Supplying Owner or any marking or legending by any Supplying Owner.

accordance with the Protective Order . . . from access to any proprietary information."

On the other hand, the Exhibit B letter did indicate the willingness of the Supplying Owners "to determine on a document-by-document basis, whether and under what terms, Mr. Rice may be accorded access to specifically identified documents containing 'Protected Information.'" The Exhibit B letter further explained that proprietary documents have varying degrees of sensitivities that preclude projection or formulation of adequate terms needed to protect proprietary content ranging from sensitive to highly sensitive. Accordingly, the letter indicated that the Supplying Owners need to know the specific identities of the documents that plaintiff's counsel or his independent expert wants Mr. Rice to review in order to be able to propose adequate terms and conditions for access. Above, plaintiff's counsel inaccurately describes the September 23, 2005 letter (Exhibit B) as "proposed terms under which Mr. Rice would be permitted to review Proprietary Information." Indeed, the thrust of the Exhibit B letter was that no terms could be proposed until the documents to be shown to Mr. Rice were identified. The letter envisioned that the specific documents sought were to be selected from those that had been previously produced in response to a subpoena or under the Protective Order entered August 24, 2005, and that a justification for access by Mr. Rice would be needed.

Then, on September 28, 2005, plaintiff's counsel sent by facsimile to defendant's counsel the letter attached as Exhibit C. By way of summary, plaintiff's counsel set forth the details of his proposed pre-consultation/pre-filing/pre-publication process that had already been rejected by the Exhibit B letter.

The Exhibit C letter does not state whether the plaintiff will agree to the Supplying Owners' proposed document-by-document process wherein plaintiff's counsel or its independent expert is to

specifically identify the documents that they want Mr. Rice to review. Plaintiff's statement herein does not indicate whether plaintiff will agree to the terms proposed by defendant and the Supplying Owners.

Defendant and the Supplying Owners oppose plaintiff's request that the court incorporate the procedure set forth in Exhibit C as part of the Protective Order. They contend that Plaintiff's proposed modification of the Protective Order to include the pre-consultation/pre-filing/pre-approval process that is expressly reviewable by the Court even after termination of this action is unacceptable. In their view, it does not provide "the requisite level of assurance that plaintiff is not, and will not become, a competitor" as contemplated by the Order. Giving Mr. Rice access to a large volume of possibly unlabeled but sensitive proprietary documents could stimulate his thinking in unforeseeable ways. This highlights the need to prevent Mr. Rice from having access to the Supplying Owners' proprietary information, since it is apparent that there is a significant risk that Mr. Rice, inadvertently or otherwise, could misappropriate and/or misuse that information. There is simply no adequate justification for exposing the Supplying Owners to this unnecessary and unfair risk. This access also could lead to premature introduction of the proprietary content into the public domain, or worse, lead to giving Mr. Rice an unwarranted opportunity to file for patent protection that could block or inhibit the Supplying Owners from exploiting their own technology.

**III. Conclusion.**

The parties believe that the foregoing report complies with the Order of August 24, 2005.

Respectfully submitted,

September 30, 2005

DOUGLAS H. ELLIOTT, ESQUIRE
Patterson, & Sheridan, LLP
3040 Post Oak Boulevard, Suite 1500
Houston, Texas 77056
Phone: (713) 623-4844
Facsimile: (713) 623-4846

Attorney for Plaintiff

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

September 30, 2005

S/ B. Frederick Buchan, Jr.
B. FREDERICK BUCHAN, JR.
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Phone: (202) 307-0335
Facsimile: (202) 307-0345

Attorneys for Defendant

OF COUNSEL:
KEN B. BARRETT
Attorney
Department of Justice

**EXHIBIT A**

**Letter dated August 25, 2005,**
**from Douglas H. Elliot**
**to B. Frederick Buchan, Jr., et al.**

MOSER
PATTERSON &
SHERIDAN, LLP
ATTORNEYS AT LAW

August 25, 2005

***Via E-Mail, Facsimile & First Class Mail***

Mr. B. Frederick Buchan, Jr.
Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

Daniel S. Herzfeld
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Boulevard
McLean, Virginia 22102

James A. Oliff
Richard E. Rice
Oliff & Berridge
700 South Washington Street
Alexandria, VA 22314

Christopher O. Cambria
Bruce Latimer
L-3 Communications Corporation
105 Commerce Valley Drive West, Suite 410
Markham, ON L3T 7W3

Re: No. 05-187C; Ivan G. Rice v. United States of America;
In the United States Court of Federal Claims;
Judge James F. Merow

Gentlemen:

In accordance with the Court's Order dated August 24, 2005 please confer with one another and provide us with a joint written proposal concerning "terms that would permit access by plaintiff to [your] proprietary information, or portions thereof, and would cover the restriction(s) as to the future activity by plaintiff that would be necessary to provide the requisite level of assurance that plaintiff is not, and will not become, a competitor."

Very truly yours,

MOSER, PATTERSON & SHERIDAN, L.L.P.

Douglas H. Elliott

DHE/srm

**EXHIBIT B**

**Letter dated September 23, 2005,**
**to Douglas H. Elliot**
**from B. Frederick Buchan, Jr.**

**U.S. Department of Justice**

BFB:typ
154-05-187

Telephone: (202) 307-0335
Facsimile: (202) 307-0345

*Washington, D.C. 20530*
September 23, 2005

**VIA E-MAIL, FACSIMILE & CONFIRMATORY COPY BY FIRST CLASS MAIL**

Douglas H. Elliott, Esquire
Moser, Patterson & Sheridan, LLP
3040 Post Oak Boulevard, Suite 1500
Houston, Texas 77056

Re: *Ivan G. Rice v. United States*,
Court of Federal Claims No. 05-187 C

Dear Doug:

This letter pertains to the Court's Order filed August 24, 2005, and your letter to me dated August 25, 2005, requesting a joint written proposal concerning "terms that would permit access by plaintiff to [the supplying owners'] proprietary information, or portions thereof, and would cover the restriction(s) as to the future activity by plaintiff that would be necessary to provide the requisite level of assurance that plaintiff is not, and will not become, a competitor." You and I discussed some facets of the terms by telephone on September 16, 2005.

I have further consulted with counsel for the principal supplying owners and am reporting their consensus to you.[1] One of the possible future activities of Mr. Rice about which the supplying owners had been concerned during the briefing as to entry of the Protective Order has occurred. Soon after the Court's ruling, your client, Ivan G. Rice, filed suit in the Tyler Division of the Eastern District of Texas against Honeywell International Inc. and Rolls-Royce PLC for infringement of the same patent in this action. Your client's status as a very active litigant in plural cases gives rise to a greater potential for his misuse of proprietary information, even if inadvertently, particularly since "Protected Information" disclosed in this case is only to be used for purposes of this case. Frankly, the filing of the action in Texas has heightened the supplying owners' concerns regarding the motivations of Mr. Rice in seeking to obtain access to their proprietary information.

Moreover, we understand from our telephone conversation that Mr. Rice will not absolutely forego the future preparation and filing of additional patent applications on gas turbines or writing

[1] Counsel for the following were consulted: Honeywell International [the successor in interest to AlliedSignal], L-3 MAPPS [the successor in interest to CAE Electronics Ltd], Northrop Grumman Corp. [the successor in interest to Westinghouse Corp.], and Rolls-Royce Industrial & Marine Gas Turbines, Ltd.

and publishing of technical articles about them. The proprietary information belonging to as many as four of the supplying owners is quite voluminous and can be widely varied in scope. Accordingly, review by the supplying owners of final drafts of the applications or articles just before filing or publishing them does not provide adequate protection. Thus, Mr. Rice should continue to be precluded in accordance with the Protective Order entered in this case on August 24, 2005, from access to any proprietary documents.

Since proprietary documents can have varying degrees of sensitivity, it is impossible to project in advance the terms needed to adequately protect the information from improper disclosure and use. There is no pending discovery request in this case directed to any of the supplying owners and no selection of Government-maintained documents for which any supplying owner must receive written notice under Paragraph 4 of the Protective Order. Thus, in the supplying owners' view, there is no document or category of documents which have been identified to them with reasonable particularity for which access by Mr. Rice is being requested. Resolution of the issue of Mr. Rice's access must start with an identification of the documents for which Mr. Rice is requesting access. Requests for the supplying owners to give blanket authorizations to large numbers of documents potentially containing proprietary information, *i.e.*, "Protected Information" under the Order, are not sensible.

The supplying owners are willing to determine on a document-by-document basis, whether and under what terms, Mr. Rice may be accorded access to specifically identified documents containing "Protected Information." Such documents must have been previously produced to plaintiff's counsel in response to a subpoena of a non-party or under the Protective Order in compliance with the Court's rules. Also, plaintiff's counsel should send the request for the terms determination to defendant's counsel along with an adequate justification as to Mr. Rice's need to review the particular document in order to prosecute this case. Presumably, plaintiff's counsel and plaintiff's acceptable, independent expert for this case will have previously reviewed and selected the particular documents that they wish to disclose to Mr. Rice.

Please send me by Wednesday afternoon, September 28, 2005, a draft of your position to include in the Status Report due September 30, 2005. I will attempt to draft a Joint Response.

Please feel free to call me at the above telephone number should you have any questions.

Very truly yours,

B. FREDERICK BUCHAN, JR.
Attorney
Commercial Litigation Branch
Civil Division

**EXHIBIT C**

**Letter dated September 28, 2005,
from Douglas H. Elliot
to B. Frederick Buchan, Jr.**

PATTERSON &
SHERIDAN, LLP
ATTORNEYS AT LAW

September 28, 2005

***Via E-Mail, Facsimile & First Class Mail***

Mr. B. Frederick Buchan, Jr.
Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

Re: No. 05-187C; Ivan G. Rice v. United States of America;
In the United States Court of Federal Claims;
Judge James F. Merow

Dear Mr. Buchan:

We are writing this letter in accordance with this Court's August 24, 2005 Order, and in reply to your September 23, 2005 letter.

Consistent with our telephone discussion on September 16, 2005, Plaintiff proposes the following procedure, in the unlikely event Mr. Rice wishes to file any new patent applications, publish technical articles, or engage in consulting work relative to gas turbines. Plaintiff also proposes that this procedure be incorporated into the Protective Order, which survives the termination of this action.

> In the event Mr. Rice wishes to file a patent application, publish a technical article, or engage in consulting work relating to gas turbines, Mr. Rice shall submit a copy of any such patent application he wishes to file, article he intends to publish, or the identity of any client for whom he proposes to provide consultation involving gas turbines, to counsel for Defendant, and to each of the Supplying Owners, for their approval, along with a request to file the application, publish the article, or provide consultation. At that stage, each proposed application and article shall be treated as Proprietary Information under the Protective Order. The Defendant and each Supplying Owner shall have thirty (30) days from the submission to object in writing to Mr. Rice to the filing of the patent application, the publication of the article, or the consulting engagement, on grounds that the patent application or article contains or is based on confidential information of the objecting Defendant or Supplying Owner, or that the

consulting engagement is likely to involve transmission of confidential information of the Defendant or Supplying Owner. Within thirty (30) days of any such objection, Mr. Rice may either withdraw the request, or appeal the objection to this Court, on grounds that the patent application or article neither contains nor is based on confidential information of the Supplying Owner, or that the consulting engagement is not likely to involve transmission of confidential information. The Court may then decide whether the objection is proper, and grant or deny Mr. Rice's request to file the patent application, publish the technical article, or engage in the consulting work. Until the Court orders that the objection is improper, and grants his request, the contents of the application or article shall be maintained as Proprietary Information and Mr. Rice will be forbidden from filing the application, publishing the article, or engaging in consultation.

Please include the above proposal in your draft of the Status Report to be filed with the Court, along with any proposal by Defendant or any Supplying Owner; and forward the draft Status Report for our review before finalizing.

Thank you for your cooperation.

Very truly yours,

PATTERSON & SHERIDAN, L.L.P.

Douglas H. Elliott

DHE/srm