**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **IVAN G. RICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 05-187C** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Senior Judge James F. Merow** |
| **Defendant.** | ) | |

**HONEYWELL'S MEMORANDUM IN OPPOSITION TO PLAINTIFF RICE'S UNOPPOSED MOTION TO STAY PROCEEDINGS**

## I. PRELIMINARY STATEMENT

Honeywell International Inc. ("Honeywell") is a third party to this action, and a defendant in a related action in the U.S. District Court for the Eastern District of Texas, *Ivan G. Rice v. Honeywell International Inc. and Rolls-Royce plc*, Case No. 6:05 CV 330 (the "Texas Action"). Honeywell respectfully submits this Memorandum in Opposition to Plaintiff Rice's Unopposed Motion to Stay Proceeding (the "Motion") to assert its strenuous objections to Rice's Motion, which was electronically filed with the Court yesterday. Rice's Motion seeks to stay this case pending the outcome of the Texas Action, which Rice filed against Honeywell and Rolls-Royce plc ("Rolls-Royce") seven months after he filed this case. Honeywell and Rolls-Royce were both contractors under a Government contract to develop and produce the WR-21 engines at issue in this case. Honeywell's primary activity in this regard was to supply heat exchangers, which were incorporated into the intercoolers supplied by Rolls-Royce. These heat exchanger cores are not claimed in Rice's patent. Honeywell's total revenues from sales of these heat

exchangers to date is approximately $4.5 million. Rice originally filed his infringement claims relating to the WR-21 engine in this Court in 1997, *see Rice v. United States,* Case No. 97-246 C (Fed. Cl. 1997) (the "1997 Action"). Rice chose not to sue Honeywell or Rolls-Royce in 1997 or at any time before he brought the Texas Action in 2005.

## II. ARGUMENT

Honeywell respectfully urges the Court to deny Rice's Motion because the requested stay will not result in any conservation of judicial resources, or cost savings to the parties. To the contrary, staying this action pending the resolution of the Texas Action is most likely to multiply the overall expense and duration of the legal proceedings. Moreover, Rice's Motion is being brought purely for tactical reasons in blatant disregard for the first-to-file rule.

### A. Rice Chose To File First In This Court

Rice purposely chose to pursue his patent claim against the Government in this Court in February 2005, seven months *before* pursuing similar claims against Honeywell and Rolls-Royce in the Texas Action, despite the fact that he was, at all times during that eight year period, fully aware of Honeywell and Rolls-Royce's respective roles under the government contract. Since then, Rice has aggressively sought discovery from the Government, as well as Honeywell and Rolls-Royce. He also has engaged in heated motion practice in this Court with respect to Rice's right to examine Honeywell's and Rolls-Royce's confidential and proprietary technical information. This Court ultimately ruled against Rice on August 24, 2005, and entered a protective order that excluded him from having blanket access to protected information. The Court reached the same conclusion in Rice's 1997 Action.

### B. Rice's Stay Motion Was Prompted By The Scheduling Order In The Texas Action

Although Rice filed the Texas Action in September 2005, he made no mention of any concern about "duplicative" judicial proceedings until January 2006, after the judge in the Texas Action issued a Notice of Scheduling Conference with attached Docket Control Order (the "Proposed Scheduling Order"). Pursuant to this Scheduling Order, counsel for Rice, Honeywell and Rolls-Royce held a Rule 26(f) conference on January 4, 2006. One of the items discussed at this conference was the form of Protective Order to be entered in the Texas Action. Despite this Court's prior orders that Rice should be denied blanket access to Honeywell's and Rolls-Royce's confidential technical information, Rice's counsel advised Honeywell and Rolls-Royce that Rice would renew his request for access to their confidential technical information in the Texas Action, which they presumably perceive as a friendlier forum. That same day, Honeywell and Rolls-Royce received notice that the Government had agreed not to oppose Rice's request for a stay of this case.

Courts have routinely denounced this kind of forum-shopping under the "first to file" rule, and this Court should do the same. *See, e.g.*, *Summagraphics Corp. v. United States*, 15 Ct. Cl. 27, 28 (Ct. Cl. 1988) ("An order to stay proceedings is discretionary, and absent a showing of a balance of convenience favoring the later action or unless there are special circumstances, the first filed suit is presumed to have priority over subsequent actions."). The sole case that Rice relies on to support his request for stay, *Corning Glass Works v. United States*, 220 Ct. Cl. 605 (1979), is not to the contrary. In *Corning*, the Court of Claims stayed a suit against the Government pending resolution of a district court action against a supplier who sold the accused device to the United

States, as well as other customers. The two suits at issue in *Corning* were filed on the *same* date. In contrast, here, Rice waited a full seven months after he filed this lawsuit to file the Texas Action. Therefore, *Corning* does nothing to undermine the applicability of the "first to file" rule to the facts of this case.

Rice relies on the dicta in *Corning* that courts generally favor suits against suppliers over suits against customers, even where the customer's suit was filed first. However, the dispositive factor in *Corning* was that the accused product was an off-the-shelf, "catalog" item for which the supplier would be obligated to indemnify its customers. Indeed, in granting the stay, the *Corning* court noted that, "[s]ince the Government bought commercially available waveguides, plaintiff's suit in this court is not essentially different from an ordinary customer suit." *Id.* *See also* CHISUM ON PATENTS, § 16.06 n.52 and accompanying text (citing *Corning* for the proposition that "[i]f the defendant makes, uses, or sells an invention for both the United States *and others*, a district court may adjudicate a claim of infringement as to the latter.") (emphasis added). Here, in contrast, the WR-21 was specifically developed at the behest of the Government, pursuant to the Government's own specifications. Honeywell does not have any obligation to indemnify the Government. Rather, as discussed below, the Government is liable for Rice's infringement claims against Honeywell under 28 U.S.C. § 1498.

**C. Rice's Argument That A Stay Would Result in Judicial Economy Is Also Flawed**

Contrary to Rice's contention, staying the proceedings would not favor judicial economy. The Government has expressly reserved "its right to contest issues including claim construction, validity, infringement and compensation, as may be appropriate after the conclusion of the Texas Action." Thus, the stay that Rice seeks would offer the Government the benefit of having claims against it defended at private expense, while reserving the unilateral right to take a second bite at the apple if it is dissatisfied with the outcome in the Texas Action. This tactic maximizes the likelihood that this action will be serially litigated after the Texas Action is concluded, thereby doubling the judicial and monetary resources allocated to Rice's patent claims.

It also is untrue that a stay would result in any discovery advantages to Rice. Honeywell has already produced documents to Rice in this action, and is preparing to produce additional documents shortly. Honeywell has also been advised that the Government is prepared to make its documents available for inspection, and has already communicated with Rice's counsel to offer such inspection within the next several weeks. In contrast, Honeywell and Rolls-Royce are not obligated to produce documents in the Texas Action until March 6, 2006, and neither the Government nor any other third party has yet been subpoenaed in that case.

Furthermore, Rice's assertion that discovery from Rolls-Royce will be easier in the Texas Action is incorrect. While Honeywell has no knowledge of Rolls-Royce's intentions with respect to document production in this case or the Texas Action, Honeywell is aware that discovery from Rolls-Royce's U.K. facilities is governed by certain international conventions. To the extent these international conventions create

obstacles to Rice's desired discovery, those obstacles will not be removed by the voluntary disclosure rules in the Texas Action. Rather, the voluntary disclosure rules are substantially the same as the provisions of F.R.C.P. 26(a), which do not impose any obligation on a party to produce documents that otherwise would be protected from discovery under international law. Even if the desired discovery could be obtained from Rolls-Royce or Honeywell more readily in the Texas Action, the more efficient approach would be to implement an agreement that any discovery taken in this case can be used in the Texas Action.

Finally, Honeywell intends promptly to file a motion to dismiss the Texas Action on the ground that Rice's claims in that action should have been brought against the Government in this Court pursuant to 28 U.S.C. §§ 1491, 1498. If Honeywell's motion is granted, the Texas Action will be dismissed.

## III. CONCLUSION

For the foregoing reasons, Honeywell urges this Court to deny Rice's Motion.

Respectfully submitted,

s/ Richard L. Brusca by
s/ Elizabeth C. Billhimer

Richard L. Brusca
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 371-7140
Fax: (202) 661-8209