**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| IVAN G. RICE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-187 C |
| | ) | |
| v. | ) | Senior Judge James F. Merow |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES' RESPONSE TO**
**THE PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

The government submits this brief in response to the plaintiff's Supplemental Claim Construction Brief filed under seal on August 22, 2008.

## I. JANG DOES NOT EXPAND THE COURT'S ABILITY TO CONSIDER THE ACCUSED DEVICE WHEN CONSTRUING CLAIMS

Jang v. Boston Scientific Corp., 532 F.3d 1330 (Fed. Cir. 2008) does not state that this Court should consider the accused device as it determines the proper construction of claim terms. Rather, Jang is relevant to the Court if it adopts claim constructions that the parties stipulate would preclude a finding of infringement. In such a case, in view of Jang, the Court might consider reviewing the parties' stipulation of non-infringement and the record as a whole to ensure that the impact of the claim constructions is obvious during appellate review. See id. at 1336-37.

In Jang, a Federal Circuit panel was asked to determine whether the district court had properly construed a claim. Id. at 1331. The parties had stipulated that infringement could not be shown if the district court's claim constructions were upheld on appeal. Id.

The Federal Circuit court can exercise appellate jurisdiction only in cases where the judgment to review is unambiguous. Id. at 1334 (citing United States v. Procter & Gamble Co., 356 U.S. 677, 680-81 (1958)). According to the Federal Circuit panel, the stipulation from the

district court was ambiguous because "it [was] impossible to discern from the stipulated judgment which of the district court's claim construction rulings would actually affect the issue of infringement." Jang, 532 F.3d at 1336.

Furthermore, the Federal Circuit panel was not presented with enough information to understand how the district court's claim constructions had been applied by the parties in order for them to agree via stipulation that the plaintiff in that case could not prove infringement. Id. at 1337 ("'Without the vital contextual knowledge of the accused products or processes, this appeal takes on the attributes of something akin to an advisory opinion on the scope of the [asserted] patent.'") (quoting Lava Trading, Inc. v. Sonic Trading Management, LLC, 445 F.3d 1348, 1350 (Fed Cir. 2006). The Federal Circuit panel remanded the case to the district court so that the district court's constructions could be applied to the accused device because the impact of the constructions was not obvious from a simple examination of the record documents. Jang, 532 F.3d at 1337.

Thus, the Federal Circuit panel could not properly exercise its appellate jurisdiction because the Court was not presented with enough information to understand which of the claim term constructions needed to be considered on appeal, id. at 1336, and because the Court could not determine from the record how the claim constructions precluded infringement of the accused device, id. at 1337.

In view of the preceding, the portions of the plaintiff's supplemental claim construction brief which presents arguments for a certain claim construction based on the accused device should be rejected by the Court. The construction of the claims at issue should follow the law as stated in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc), which was discussed

in the government's claim construction brief. (Document 54.) None of the Phillips guidance permits a court to base its construction of a disputed claim term on the accused device.

## II. THE DUPONT REFERENCE DISCLOSES TWO INTERCOOLERS

The plaintiff states that DuPont discloses "a single intercooler 26, which is also annular." Pl.'s Supp. Cl. Const. Br. at 3. DuPont discloses two annular intercoolers: a fuel-to-air heat exchanger 26 and another fuel-to-air heat exchanger 28. DuPont, col. 2, lines 13-19 & col. 1, lines 70-71 (Pl. Opening Cl. Const. Br., Ex. H).

Furthermore, as shown in the prosecution history of the '499 patent cited in footnote 1 of the plaintiff's supplemental brief[1], the plaintiff discussed both heat exchanger 26 and heat exchanger 28 when stating that "[a]nnular ducting and intercooler are used by DuPont et al thus limiting the surface area and approach temperatures achievable." See Pl.'s Opening Cl. Const. Br., Ex. D at 9. While the plaintiff did discuss the pressure drop across both heat exchanger 26 and 28 at page 9 of the cited prosecution history, the plaintiff did not distinguish intercooler 28 by noting that it is between compression stages of a single turbine spool as the plaintiff now claims that he did. See Pl.'s Opening Cl. Const. Br., Ex. D at 9.

## III. THE PLAINTIFF DISCLAIMED ANNULAR INTERCOOLERS DURING PROSECUTION

"The doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." Omega Engineering, Inc. v. Raytek Corp., 334 F.3d 1314, 1323 (Fed. Cir.

[1] In footnote 1 of his supplemental brief, the plaintiff refers to pages 9 and 10 of Exhibit E of his Opening Claim Construction Brief. This appears to be a typographical error --- it appears that the plaintiff intended to cite pages 9 and 10 of Exhibit D of his Opening Claim Construction Brief. See Pl.'s Supp. Cl. Const. Br. at n.1.

2003). Prosecution disclaimer "promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." Id. at 1324.

"Claim terms are entitled to a heavy presumption that they carry their ordinary and customary meaning to those skilled in the art in light of the claim term's usage in the patent specification." Elbex Video, Ltd. v. Sensormatic Electronics Corp., 508 F.3d 1366, 1371 (Fed. Cir. 2007); Phillips, 415 F.3d at 1313. However, "a claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366-67 (Fed. Cir. 2002) (citations omitted); see also Omega Engineering, Inc., 334 F.3d at 1324; Teleflex, Inc. v. Ficosa North America Corp., 299 F.3d 1313, 1326 (Fed. Cir. 2002); Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed.Cir.1985)).

"The claims, the specification, and the prosecution history are 'the most significant source of the legally operative meaning of disputed claim language.'" Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc., 262 F.3d 1258, 1267 (Fed. Cir. 2001) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The court must always consult the prosecution history, when offered in evidence, to determine if the inventor surrendered disputed claim coverage." SanDisk Corp. v. Memorex Products, Inc., 415 F.3d 1278, 1286 (Fed. Cir. 2005). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Phillips, 415 F.3d at 1317 (citations omitted); Bell Atlantic Network Services, Inc., 262 F.3d at 1268.

"[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." Omega Engineering, Inc., 334 F.3d at 1324 (quoting Standard Oil Co., 774 F.2d at 452); SanDisk Corp., 415 F.3d at 1286. "An ambiguous disclaimer, however, does not advance the patent's notice function or justify public reliance, and the court will not use it to limit a claim term's ordinary meaning." SanDisk Corp., 415 F.3d at 1287.

"An amendment made to a claim to overcome a rejection is a clear disavowal of claim coverage." Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1327 (Fed. Cir. 2003) (citing York Prods., Inc. v. Central Tractor Farm & Fam. Ctr., 99 F.3d 1568, 1575 (Fed.Cir.1996)). In addition, arguments made during prosecution of the application disclaim claim coverage if "the applicant characterized the invention using words or expressions of manifest exclusion or restriction" during prosecution. Teleflex, Inc. v. Ficosa North America Corp., 299 F.3d 1313, 1326 (Fed. Cir. 2002). Furthermore, arguments during prosecution disclaim claim coverage when the disclaimer is "made with 'reasonable clarity and deliberateness.'" SuperGuide Corp. v. DirecTV Enterprises, Inc., 358 F.3d 870, 875 (Fed. Cir. 2004) (quoting N. Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1294 (Fed. Cir. 2000)).

Here, the plaintiff did clearly disclaim subject matter when he amended claim 69 (which ultimately became claim 1 of U.S. Patent Number 4,896,499) during prosecution to add the "externally mounted" requirement to the intercooler limitation. Def.'s Cl. Const. Br. at 9; see DA 66 [G000702]; see also DA 61-62 [G000697-98] (amended claims with the added language underlined); see Amgen Inc., 314 F.3d at 1327. Furthermore, the plaintiff also characterized the invention of claim 69 using words of manifest exclusion during prosecution and made with reasonable clarity and deliberateness by observing that "Hull uses annual ducting and intercooler

and not separate piping to an externally mounted intercooler" and later stating that DuPont has the same limitations as Hull. Def.'s Cl. Const. Br. at 10-11; DA66-67 [G000702-03] (emphasis added); DA67-68 [G000703-04]; DA69 [G000705]; see Teleflex, Inc., 299 F.3d 1313, 1326 (Fed. Cir. 2002); SuperGuide Corp., 358 F.3d 870, 875 (Fed. Cir. 2004). Thus, the plaintiff has disclaimed an annual intercooler through his amendment to claim 69 viewed in light of the arguments he presented to explain the claim amendment. See Amgen Inc., 314 F.3d at 1327; Teleflex, Inc., 299 F.3d 1313, 1326 (Fed. Cir. 2002); SuperGuide Corp., 358 F.3d 870, 875 (Fed. Cir. 2004). The Court should therefore adopt the government's construction of the term "externally mounted intercooler."

## IV. THE GOVERNMENT PROPOSES MODIFICATIONS TO THE PLAINTIFF'S NEW PROPOSED CONSTRUCTION FOR THE "OUTLET DUCT" CLAIM TERM

Regarding the plaintiff's suggested construction for "said outlet duct being configured to radially expand said air flow to a low velocity," the government proposes the following modifications to plaintiff's new proposed construction[2]:

[2] The government proposed this modified construction to the plaintiff on August 20, 2008 after receiving the plaintiff's proposed new construction. Counsel for plaintiff would not agree to this construction.

| Claim Term | Defendant's Modification of Plaintiff's New Proposed Construction[3] |
|---|---|
| *said outlet duct being configured to radially expand said air flow to a low velocity* | The outlet duct being shaped to increase the cross sectional flow area in a direction generally away from and generally perpendicular to the axis of the gas generator, causing air flowing away from and generally perpendicular to the axis of the shafting to increase in volume resulting in a decreased air flow velocity to have a velocity of less than approximately 200 feet per second. |

This construction is consistent with the evidence provided by the parties in this action. In particular, the specification shows that the increase in the duct's cross-sectional area results in the desired velocity. The patent associates the change in velocity with the increase in the duct area. See Def.'s Cl. Const. Br. at 16 (citing DA15, col. 14, lines 6-8; and DA16 col. 15, lines 19-23).

[3] A "marked up" version of the government's modification of the plaintiff's new proposed claim construction follows (deletions to the plaintiff's construction are noted with double parentheticals and additions to the plaintiff's construction are noted with underlining):

> The outlet duct being shaped to increase the cross sectional flow area in a direction generally away from and generally perpendicular to the axis of the gas generator, causing [[to cause]] air flowing away from and generally perpendicular to the axis of the shafting to increase in volume resulting in a decreased air flow velocity [[, with the air flow entering the intercooler at]] to have a velocity of less than approximately 200 feet per second.

## V. CONCLUSION

For the reasons presented, the government respectfully requests that the Court adopt its proposed claim constructions.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN J. FARGO
Director

/s/ Conrad J. DeWitte, Jr.
CONRAD J. DeWITTE, JR.
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Telephone: (202) 307-0459
Facsimile: (202) 307-0345
E-Mail: conrad.dewitte@usdoj.gov

September 4, 2008